BOWLER v. NAGEL.

1. MUNICIPAL CORPORATIONS—AUTHORITY TO PROVIDE OLD-AGE PEN-
SIONS FOR EMPLOYEES IS STATUTORY.
    A city has no power to adopt an amendment to its charter
    providing for the retirement of employees who have been
    employed for a certain time and who have reached a
    certain age, and for the payment to them of certain sums
    in the nature of a pension, unless said power is con-
    ferred by statute.[1]

2. SAME—CONSTITUTIONAL LAW—AUTHORITY TO PROVIDE OLD-AGE
PENSIONS CONFERRED BY HOME RULE ACT.
    Under the home rule act (1 Comp. Laws 1915, § 3306,
    subd. c, and § 3307, subds. f, r, and t), passed by the
    legislature pursuant to the provisions of Article 8, §§
    20, 21, of the Constitution of 1908, the city of Detroit has
    power to amend its charter providing for the establish-
    ment of a civil service system and also providing for a
    retirement fund or pension to be paid, upon retirement,
    to such employees who had been employed for a certain
    time and who had reached a certain age.[2]

3. SAME—TAXATION—PUBLIC PURPOSE.
    Said amendment of the charter is held, to be for "a
    public purpose," and therefore not in violation of Article
    8 of the Constitution providing that "No city or village
    shall have power  *  *  *  to loan its credit nor to assess,
    levy, or collect any tax or assessment for other than a
    public purpose."[3]

    BIRD, FELLOWS, and WIEST, JJ., dissenting.

Certiorari to Wayne; Webster (Clyde I.), J.  Sub-
mitted June 12, 1924.  (Docket No. 42.)  Decided
October 6, 1924.

Mandamus by Frank T. Bowler to compel William
J. Nagel, controller of the city of Detroit, to pay an

[1]Municipal Corporations, 28 Cyc. p. 604 (1926 Anno); [2]Id., 28
Cyc. p. 604 (1926 Anno); [3]Id., 28 Cyc. p. 1663.
    On power of legislature to require municipality to pension
employees, see note in 34 L. R. A. (N. S.) 608.

amount due plaintiff from the pension fund. From an order granting the writ, defendant brings certiorari. Affirmed.

*John Atkinson* (*George A. Kelly*, of counsel), for appellant.

*Anderson, Wilcox, Lacey & Lawson* (*Clarence E. Wilcox*, of counsel), for appellee.

SHARPE, J.    The Constitution of 1850 contained the following provision (Art. 15, § 13) :

"The legislature shall provide for the incorporation and organization of cities and villages, and shall restrict their powers of taxation, borrowing money, contracting debts, and loaning their credit."

Our present Constitution, adopted in 1908, contains a similar provision (Art. 8, § 20).    It is followed by section 21, which reads as follows:

"Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the government of the city or village and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this State."

Pursuant to these provisions, the legislature, in 1909 (Act No. 279), enacted what is known as the "home rule act" (1 Comp. Laws 1915, §§ 3304-3341).    This act greatly extended the powers of cities to govern themselves.    The following provisions appear to be applicable to the question here presented:

"(3306) SECTION 3.    Each city charter shall provide:    *    *    *

"(c) For the qualifications, duties and compensation of its officers;    *    *    *

"(3307) SECTION 4.    Each city may in its charter provide:    *    *    *

"(*f*) For the establishment of any department that it may deem necessary for the general welfare of the city, and for the separate incorporation thereof: *Provided, however,* That these provisions shall not be construed to extend to and include public schools;   *   *   *

"(*r*) For a system of civil service;   *   *   *

"(*t*). For the exercise of all municipal powers in the management and control of municipal property and in the administration of the municipal government, whether such powers be expressly enumerated or not; for any act to advance the interests of the city, the good government and prosperity of the municipality and its inhabitants and through its regularly constituted authority to pass all laws and ordinances relating to its municipal concerns subject to the Constitution and general laws of this State;"

A civil service system was established and has been in operation in Detroit for several years. On February 17, 1923, an initiatory petition for submission to the electors of a proposed charter amendment relative to the retirement of those who had been employed in the service of the city for a period of 25 years, or who had reached the age of 70 years and been employed for a period of 15 years, and the payment to them of a stipulated sum, dependent upon the salary received by them at the time of their retirement, was presented to the council and by it submitted to a vote of the electors of the city, and by them adopted. The civil service commission, upon whom was imposed the duty, certified the name of plaintiff to the city controller as entitled to such payment. The council, on being informed of the fact, by appropriate resolution directed the controller "to transfer the sum of $15,000 from general surplus to the credit of city employees' retired and pension fund." Notwithstanding such action, the controller refused to make payment, and plaintiff filed the petition herein to compel him to do so. The trial court granted a writ of mandamus as prayed for. This, defendant reviews by certiorari.

He attacks the validity of the charter provision, insisting that it was not within the power conferred by the home rule act, and that it contravenes section 25 of article 8 of the State Constitution.

It is well settled that the power to adopt this charter amendment must be found to have been conferred on the city by the statute. *Clements* v. *McCabe,* 210 Mich. 207; *City of Kalamazoo* v. *Titus,* 208 Mich. 252.

"The city is a political subdivision of the State, created as a convenient agency for the exercise of such of the governmental powers of the State as may be entrusted to it." *City of Trenton* v. *New Jersey,* 262 U. S. 182 (43 Sup. Ct. 534, 29 A. L. R. 1471).

When the legislature enacted the home rule act, we must assume that it had in mind the provisions of the new Constitution and was seeking to comply with its provisions. Section 21, above quoted, authorized the enactment of a general law permitting the electors of the city "to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this State." Subsection (*r*) of section 3307, above quoted, delegated to the city the power to provide in its charter "For a system of civil service," and subsection (*t*) "For the exercise of all municipal powers * * * in the administration of the municipal government," and, generally, to adopt any provision which would "advance the interests of the city, the good government and prosperity of the municipality and its inhabitants," and "to pass all laws and ordinances relating to its municipal concerns subject to the Constitution and general laws of this State." Very broad power is here conferred. If we read the provisions of the Constitution and those of the statute together, as I think we should, it seems apparent that the legislature intended to and did confer upon cities the power to manage their own local affairs in their own way provided only that in so

doing they should not contravene any constitutional or statutory provision.

Under the power conferred, the city established a civil service system. Under it, employees may retain their positions until they reach a certain age. While it may be said to be their duty to provide for their enforced retirement by saving a part of their earnings, it is a well-known fact, and one recognized by most advocates of civil service, that as a rule they do not do so. The wages paid them is usually but sufficient to enable them to live comfortably. Many calls are made upon their bounty by relatives and friends, whose necessities appeal to them. Unlike the business man, whose only thought, as a rule, is the accumulation of wealth, they feel it a duty to respond to such calls. The inevitable result of the system is to turn men adrift at an advanced age without sufficient means of support or to continue them in service when unable to efficiently perform the services for which they are paid.

The day is happily past when the employer of labor feels no interest in the future of his employees. The railroads, the United States Steel Corporation, and many other large employers of labor have come to realize that the establishment of a retiring fund is not only an act of humanity but in the best interests of the stockholders and justified as an economic proposition. The reasons therefor are well stated by Norman H. F. McLeod, secretary-treasurer of Parke, Davis & Company, of Detroit, manufacturers of pharmaceutical and biological products, who had operated such a system for about 14 years. He testified:

"The object of the corporation expending its money for pensions is continuity of service, or increasing the continuity of service; decreasing the turn-over of employees, making it an object for them to stay with us. That does not appeal so much to the younger employee

or the employee that has only been with us a short time as it does to the employee that reaches the age of forty years, after which he begins to think of what he is going to do after he is unable to work longer, and he stays with the job.

"In my opinion it is an economic advantage to the company in providing this pension system for our employees—that is our real reason for setting aside the funds and making the expenditure for the pension. I believe the pension produces greater faithfulness on the part of the employee. The question of labor turnover is an item of considerable expense to an industrial concern; it is very much to the advantage of the company to have the employees in continuous employment. We look upon the pension as compensation for long service."

The beneficial results to the employer are more marked when the employee is in the service of the public than when in the service of a private party. Those seeking private employment either specially fit themselves for a particular task or begin at the "bottom of the ladder" and work up. The loss occasioned by a change of employees would not be so great as in the public service where new employees rarely have any special fitness for the particular work to which they are assigned.

The electors of Detroit, the employers of those working for the city under the civil service system, evidently believed that it would "advance the interests of the city" and be conducive to its "good government and prosperity" to provide for the retirement of its aged employees, and to that end adopted the amendment in question.

It in no way conflicts with any constitutional or statutory provision. It is but a reasonable exercise of the power conferred on the city by the statute enacted pursuant to the constitutional mandate. It affects no one except a resident or property owner in the city. The reasoning employed in *Thomas* v. *Board*

*of Sup'rs of Wayne Co.,* 214 Mich. 72, 85, is equally applicable here:

"When action is taken by a State or one of its municipal subdivisions, manifestly in the interest of its people as a whole, and the rights of individuals are not abridged thereby, and such action is not within the inhibition of some constitutional or statutory provision, it should be upheld as a valid exercise of authority, though lacking in any positive grant of power to support it."

The power must, of course, be found in the legislative enactment. It need not, however, be delegated in express words. *City of Kalamazoo* v. *Kalamazoo Circuit Judge,* 200 Mich. 146. It is sufficient if it be "necessarily or fairly implied in or incident to the powers expressly granted" or "essential to the accomplishment of the declared objects and purposes" as set forth in the enactment. 1 Dillon on Municipal Corporations (5th Ed.), § 237. In section 239 it is said:

"The rule of strict construction of corporate powers is not so directly applicable to the ordinary clauses in the charter or incorporating act of municipalities as it is to the charter of private corporations."

The moneys to be paid to retiring employees under the amendment are not gratuities. They are annuities, commonly called pensions, and in the nature of compensation for services theretofore rendered. Provisions for such payments to certain Federal officials and officers, soldiers and sailors, and the power of congress to provide therefor, although not expressly conferred by the Federal Constitution, has been upheld. *United States* v. *Hall,* 98 U. S. 343. As before stated, such payments are provided for in laws like that before us in the belief on the part of those favoring their enactment that the city is benefited thereby, that more efficient service is rendered, and that the long continuous service necessary to bring the employees

within its provisions justifies its payment as an economic proposition. A very full discussion of the principle involved will be found in the following cases: *In re Roche,* 141 App. Div. 872 (126 N. Y. Supp. 766); *Mahon* v. *Board of Education,* 68 App. Div. 154 (74 N. Y. Supp. 172); *Trustees* v. *Roome,* 93 N. Y. 313; *Hammitt* v. *Gaynor,* 144 N. Y. Supp. 123, affirmed in 165 App. Div. 909 (150 N. Y. Supp. 1089); *State* v. *Love,* 89 Neb. 149 (131 N. W. 196, 34 L. R. A. [N. S.] 607, Ann. Cas. 1912C, 542); *People* v. *Abbott,* 274 Ill. 380 (113 N. E. 696, Ann. Cas. 1918D, 450); *O'Dea* v. *Cook,* 176 Cal. 659 (169 Pac. 366).

It is also urged that the charter amendment contravenes section 25 of article 8 of the Constitution, which reads as follows:

"No city or village shall have power  *  *  *  to loan its credit, nor to assess, levy or collect any tax or assessment for other than a public purpose."  *  *  *

This objection was not raised in the answer filed to the petition for mandamus, but, as it involves a public question, we consider it. That the money which will be expended under this amendment is for "a public purpose" we have no doubt. The annuities, or pensions if you please, to be paid under it are not gratuities but in the nature of additional compensation for valuable services rendered to the city. As was said in *Mahon* v. *Board of Education, supra:*

"Such statutes are designed to benefit the public service in two ways: *First,* by encouraging competent and faithful employees to remain in the service and refrain from embarking in other vocations; and, *second,* by retiring from the public service those who, by devoting their best energies for a long period of years to the performance of duties in a public office or employment have, by reason thereof or of advanced age, become incapacitated from performing the duties as well as they might be performed by others more youthful or in greater physical or mental vigor."

On this question, the cases heretofore cited will be found instructive. See, also, *Commonwealth* v. *Walton*, 182 Pa. 373 (38 Atl. 790, 61 Am. St. Rep. 712) ; *Speer* v. *School Directors*, 50 Pa. St. 150; *Pennie* v. *Reis*, 132 U. S. 464 (10 Sup. Ct. 149).

In my opinion, the judgment of the trial court should be affirmed.

CLARK, C. J., and MCDONALD, MOORE, and STEERE, JJ. concurred with SHARPE, J.

BIRD, J. (*dissenting*). The question considered in this case is the validity of an ordinance creating a pension system for the civil employees of the city of Detroit. The ordinance was sustained in the trial court and defendant has brought the question to this court by certiorari for review.

After the ordinance was passed it was submitted to the voters in the following form:

"Shall the city of Detroit provide for the retirement of employees who have been in the employ of said city or any of its departments or commissions for a period of twenty-five years subsequent to July 1, 1896, or who have attained the age of seventy years, provided said employee has been in the city's employ for not less than fifteen years, and the payment of pensions thereafter to such employees of a sum equal to one-half of their annual salary, but not in excess of nine hundred ($900) dollars per annum."

This proposition was adopted by a requisite majority of those voting thereon.

Plaintiff, who had been continuously in the service of the city for 27 years, applied to the civil service commission for his pension, amounting to $900 per annum. It was granted. The refusal of defendant to recognize it as a valid claim against the city started this litigation. Plaintiff applied for mandamus to compel payment, and the trial court granted it.

Defendant argues two questions:

(1) Because chapter 5, title 9 of the charter of the city of Detroit is beyond the scope of Act No. 279, Pub. Acts 1909 (the home rule act), and, therefore, *ultra vires.*

(2) Because it is in direct contravention of section 25, article 8 of the Constitution of the State of Michigan, and, therefore, unconstitutional.

The provisions of the home rule act under which it is sought to justify the ordinance are the following:

"(3306) SECTION 3.    Each city charter shall provide: * * *

"(c) For the qualifications, duties and compensation of its officers.

"(3307) SEC. 4.    * * *

"(f) For the establishment of any department that it may deem necessary for the general welfare of the city, and for the separate incorporation thereof, *Provided, however,* That these provisions shall not be construed to extend to and include public schools.

"(t) For the exercise of all municipal powers in the management and control of municipal property, and in the administration of the municipal government, whether such powers be expressly enumerated or not; for any act to advance the interests of the city, the good government and prosperity of the municipality and its inhabitants and through its regularly constituted authority to pass all laws and ordinances relating to its municipal concerns subject to the Constitution and general laws of this State."

If we concede for the moment the power to create a pension act for civil employees of a municipality, has that power been delegated to the city of Detroit? An examination of the provisions cited does not disclose that the power has been expressly granted. The question then arises, Has it been impliedly granted?    It is said the test of the right by implication to exercise any particular power is the necessity of such power, not its convenience.    *Crofut* v. *City of Danbury,* 65 Conn. 294 (32 Atl. 365); *Clements* v. *McCabe,* 210 Mich. 207.

If measured by this test, can the implied power to exercise this claimed right be found? It is not claimed that this right must be exercised in order to make any express power effective or efficient. If the city's right to pension its civil employees is denied, it in no way lessens the strength and force of the city government. The implication cannot, therefore, be established on the ground of necessity.

It is argued that subdivision (c), heretofore quoted, which provides for the qualification, duties and compensation of its officers authorizes the inference that the council has the implied power. Because the city has the power to select employees and define their qualifications and to fix their compensation, it does not follow that from that power a right could be implied to tax the inhabitants of the city to continue to pay the employees a percentage of their yearly salary after they had ceased to render any services for the city.

A further question arises as to whether the creation of a pension fund for civil employees is a public purpose within the meaning of the Constitution and taxing laws. And whether this would not be granting extra compensation after the services were rendered and after the contract had been entered into in violation of section 3, article 16 of the Constitution, is also a question.

A still further reason for refusing to find an implied authority to exercise this right is because it is a doubtful one. The question whether a municipality has the right to tax to raise a fund to pay additional compensation to civil employees after the service is ended and the contract price therefor has been fully paid, is a doubtful one.

A consideration of these questions leaves us in serious doubt whether the ordinance can be sustained by implied power. Being in doubt we should hold the power does not exist. *Crofut* v. *City of Danbury,*

*supra; City of Port Huron* v. *McCall,* 46 Mich. 565; 28
Cyc. p. 265.    In the last citation it is said:

"Where a particular power is claimed for a munici-
pal corporation, and particularly where private right
is infringed or imperiled by a power claimed, any fair,
reasonable doubt as to the existence and possession of
the power will be resolved against the corporation and
the power denied to it."

"It is a well-settled rule of construction of grants
by the legislature to corporations, whether public or
private, that only such powers and rights can be
exercised under them as are clearly comprehended
within the words of the act, or derived therefrom by
necessary implication, regard being had to the objects
of the grant.    Any ambiguity or doubt arising out of
the terms used by the legislature must be resolved in
favor of the public.    *    *    *

"When a State means to clothe a corporate body with
a portion of her own sovereignty and to disarm her-
self to that extent of the power that belongs to her,
it is so easy to say so, that we will never believe it to
be meant when it is not said.    In the construction of
the charter, to be in doubt is to be resolved; and every
resolution which springs from doubt is against the
corporation."    *Grand Rapids, etc., Power Co.* v. *Grand
Rapids, etc., Gas Co.,* 33 Fed. 667.

"The principle of strict construction should not be
pressed in any case to such an unreasonable extent
as to defeat the legislative purpose fairly appearing
upon the entire charter or enactment.    Perhaps the
rule as it is briefly expressed in the text best embodies
the result . of the adjudications upon this point,
namely: If, upon the whole, there be fair, reasonable
and substantial doubt, whether the legislature intended
to confer the authority in question, particularly if it
relates to a matter of extra-municipal or unusual in
its nature, and the exercise of which will be attended
with taxes, tolls, assessments or burdens upon the
inhabitants, or oppress them, or abridge natural or
common rights, or divest them of their property, the
doubt should be resolved in favor of the citizen and
against the municipality."    1 Dillon on Municipal
Corporations (3d Ed.), pp. 118, 119, note.

There is still more or less of a prevailing opinion that under the home rule act the local legislature may legislate with the same freedom that the State legislature does. In view of this, it may not be unprofitable to repeat what was said in *City of Kalamazoo* v. *Titus*, 208 Mich. 252, bearing on that question:

"Political experiment has not yet produced, in this State, the autonomous city,—a little State within the State. We have a system of State government and the right of local self-government is, and always has been, a part of the system. We have, as we have always had, a State Constitution, the fundamental law. By it, now, as formerly, the legislative power of the State, and all of it, is reposed for exercise in a legislature; save only as reserved by referendum and initiative proceedings, which are not here involved."

It appears to be conceded that the ordinance in question is not supported by any express authority conferred by the legislature, and we are of the opinion that no implied power can be found in any of the provisions of the statute which would authorize the city of Detroit to create a pension system for its civil employees. A pension system for civil employees (outside of the hazardous employments) is an innovation in the conduct of municipal affairs. It is an entry into a new field and seriously affects the taxing power of the city. It is a question upon which there is much diversity of opinion. It is not only a debatable question but it involves statutory and constitutional questions. It involves an important question of State policy. It is rather puzzling when one undertakes to explain why city employees should be pensioned, and boiler makers and dress makers should not be. There may be some sound reason why a city employee with an easy job should not lay aside something in his working days to make the closing days of his life more comfortable and interesting, as well as a carpenter or a blacksmith. If there be a

reason it is for the legislature to consider and answer by declaring a State policy, as has been done in nearly every other State where the question has reached the courts. In nearly all the cases cited the courts considered legislative acts and not municipal ones. The question is a serious one and demands the best thought of the legislature. It should not be left to the uncertain reasoning and conclusions of city and village councils.

Taking the view we do of the first question, the second one will not be discussed.

The order of the trial court should be reversed and the petition denied. No costs should be allowed.

FELLOWS and WIEST, JJ., concurred with BIRD, J.