KANE v. CITY OF FLINT.

DELLING v. SAME.

1. MUNICIPAL    CORPORATIONS—CHARTERS—AMENDMENT—CONSTRUCTION.

   The provisions of an amendment to a city charter must be read and construed in connection with other provisions of the charter.

2. SAME—CIVIL SERVICE COMMISSION—CITY COMMISSION—CLASSIFICATION AND COMPENSATION OF EMPLOYEES.

   The civil service amendment to a city charter empowering the the city civil service commission to classify all the offices and positions of employment and including a provision that "like classifications of work are to receive like compensation" did not deprive the city commission of its charter power to fix the compensation of all officers and employees of the city (Flint City Charter, §§ 8, 15, 236[a]).

REFERENCES FOR POINTS IN HEADNOTES

[1] See, generally, 37 Am Jur, Municipal Corporations § 19.
[2] See, generally, 37 Am Jur, Municipal Corporations §§ 109, 255.
[3, 4] 37 Am Jur, Municipal Corporations § 255 et seq.
[5] 40 Am Jur, Pensions § 3.
[6] 38 Am Jur, Municipal Corporations § 399.
[7] 14 Am Jur, Costs § 36.

3. SAME—COMPENSATION OF FIREMAN AND POLICEMEN—CHARTERS.

A city commission, in fixing compensation payable to firemen and policemen, properly took into consideration various benefits by way of insurance protection, retirement and total disability pensions, and allowances for uniforms, none of which were given to other city employees, in complying with provision of charter that like classifications of work were to receive like compensation (Flint City Charter, § 236[a]).

4. OFFICERS — COMPENSATION — SALARY — PENSIONS — CLOTHING ALLOWANCES — INSURANCE — OTHER BENEFITS.

The term "compensation" as applied to the remuneration of officers, fiduciaries, and others, is not synonymous with "salary" but may include pensions, clothing allowances, insurance or other benefits.

5. SAME—PENSIONS.

Public money paid to a public officer by way of a pension does not constitute a gratuity but is in the nature of additional compensation for valuable services rendered to the public designed to procure efficient and long-continued service.

6. MUNICIPAL CORPORATIONS—OFFICERS—GRATUITIES.

A city lacks power to pay gratuities to its officers and employees.

7. COSTS—PUBLIC QUESTION—CONSTRUCTION OF MUNICIPAL CHARTERS.

No costs are allowed in action by municipal firemen and policemen to recover additional compensation for services rendered, where a public question was involved in the construction of city charter provisions (Flint City Charter, §§ 8, 15, 236[a]).

Appeal from Genesee; Hartrick (George B.), J., presiding. Submitted January 12, 1955. (Docket No. 14, Calendar No. 45,771.) Decided March 9, 1955.

Action by Gilbert L. Kane against city of Flint, a municipal corporation, for additional compensation claimed under charter provision. Similar action by Carl Delling consolidated. Stipulation joining as parties plaintiff 175 other city firemen and policemen who had filed claims. Judgment for defendant. Plaintiffs appeal. Affirmed.

*Herbert W. Devine, Arthur C. Elliott,* and *Cline & George* (*Richard C. Fruit,* of counsel), for plaintiffs.

*Weiss & Damm,* for defendant.

BOYLES, J. This appeal calls for construction of certain provisions in the charter and ordinances of the city of Flint. Plaintiffs, who are city firemen and policemen, brought suit against the city for additional compensation to which they claimed they were entitled, denied them by the city. Circuit Judge George B. Hartrick, presiding in Genesee county, heard the case without a jury and entered judgment of no cause for action. The plaintiffs appeal.

The Flint city charter provides for a city commission and vests in it the power to prescribe the compensation of all officers and employees of the city, as follows:

"Sec. 8. Powers of Commission. The [city] commission shall be and constitute the legislative and governing body of the city and shall possess full power and authority to enact such ordinances and adopt such resolutions as it shall deem proper for the purpose of enforcing and exercising any or all of the powers possessed by the city."

"Sec. 51. Compensation. The compensation of all elective and appointive officers and of all employees of the city, including all election officials shall be prescribed by the commission by ordinance, except as otherwise specifically provided herein."

In 1935 an amendment to the charter provided for a civil service commission, its powers and duties to include the following (Sec. 236[a]):

"It shall classify with the cooperation of the various department heads, all the offices and positions

of employment, showing for each class established the class title, the duties performed and the responsibilities involved in each class, the minimum qualifications to be required of future applicants seeking employment and the standard scale of compensation as set by the city commission, and various boards appointed by the city commission. *Like classifications of work are to receive like compensation.*"

Plaintiffs base their claim wholly on the concluding sentence of the above section. They claim they are not receiving like compensation for like classifications of work. Apparently, plaintiffs consider "compensation" to mean "salaries" or "wages."

In 1943 the city commission adopted a "Uniform Pay Ordinance, * * * fixing the compensation to be paid employees and appointive officers for their services to the city of Flint." It sets up a uniform schedule of wage rates, differentiating between salaries to be paid, according to the number of years of service. In sections 9, 17 and 18 it sets up additional special provisions for firemen and policemen. Those who are under the pension or insurance benefit plan, or eligible therefor, are to be paid no premium pay for night work, but only "straight time" for hours of work over normal work week; if they had been employed 1 year or more prior to July 1, 1943, they should receive compensation at the 2-year service completion rate or $130 above their annual rate of August 18, 1943, whichever was higher. The ordinance also differentiates as to compensation between firemen drivers and firemen privates, and as to policemen classified as "patrolmen PO-6," as to their rates of compensation, depending upon the length of service.

There is no denial of the authority of the city commission to fix the compensation of firemen and policemen, as thus differentiated, unless it be the

above provision in the civil service amendment to the city charter on which plaintiffs rely: "Like classifications of work are to receive like compensation." As stated, it occurs in the 1935 amendment to the city charter creating a civil service commission and defining its powers and duties (Sec. 236 [a]).

The city commission, in fixing the "compensation" to be paid to firemen and policemen took into consideration certain benefits afforded them by the city which were not shared in by other city employees. Under sections 202–211 of the city charter provisions were made for a retirement pension for life for firemen and policemen who had served as such for 25 years or who were totally disabled in the discharge of duty. Their monthly pension during life was fixed at 1/2 of the monthly salary held at the date of retirement. Other pension provisions were therein made for partial disability for firemen and policemen who sustained injuries or contracted disease or illness by reason of their occupation, and also for life pension for a surviving widow, and pensions for their children or other dependents. A provision therein authorizes the city commission to raise by taxes the money necessary to pay these pensions. A 1947 amendment, called the "Gabriel Plan," provides that the then pension provisions should not apply to one employed after May 15, 1947, or one who elected within 6 months to accept a certain other pension plan provided for city employees. However, plaintiffs declined to come under the provisions of the so-called "Gabriel Plan" and their claims for compensation in the case at bar are from July 1, 1943, to April, 1946 (the date of the "Gabriel Plan"), and then to April 1, 1947.

There would seem to be an apparent conflict in the charter provisions and ordinances, resulting in discrimination between firemen, and also between

policemen, as to their compensation, unless they are read and construed together, in the light of certain facts and circumstances. The provision in the civil service amendment (Sec. 236[a]) on which the plaintiffs wholly rely, must be read and construed in connection with other provisions of the charter. The civil service commission, under that amendment, was given the power to classify all the offices and positions of employment. In so doing, the authority of the civil service commission to classify employees was limited by the concluding sentence of said section 236(a) that "Like classifications of work are to receive like compensation." Thereon the plaintiffs wholly place their claim that they have not been receiving the compensation to which they are entitled.

However, that provision does not deprive the city commission of its power to fix the compensation of all officers and employees of the city. The city commission, in fixing the compensation to be paid to firemen and policemen, took into account various benefits they were receiving at city expense, not common to other city employees. The city commission considered at length and evaluated the benefits to the firemen and policemen provided for by the retirement pension plan, which provides for retirement pension benefits. The "Gabriel Plan" also allows firemen and policemen to elect to substitute it for their earlier retirement pension plan. Furthermore, the city commission also provides a group insurance policy of $1,000 for each fireman and policeman, increased to $2,000 for each who should be employed 10 years, premiums paid by the city. Also, the city furnishes uniforms for all firemen and policemen. These additional benefits, not shared in by other city employees, were considered by the city commission as a part of the "compensation" which

firemen and policemen were to receive, along with the salaries they received.

We do not agree with plaintiffs that charter retirement pensions, insurance premium payments and the furnishing of uniforms cannot be considered as "compensation." Nor is there merit to plaintiffs' argument that such benefits, admittedly still being received by the plaintiffs, cannot be included as compensation on the ground that they are not contractual and that the city can discontinue them. Conceding that the city can legally discontinue retirement pension benefits, group insurance and furnishing of uniforms, these still are benefits while being received by the firemen and policemen. The question is, may they be considered by the city commission as a part of the compensation received by the firemen and policemen?

Cyclopedic Law Dictionary (3d ed), at p 211, thus defines "compensation":

"It is applied to the remuneration of officers, fiduciaries, et cetera, but is not synonymous with 'salary.' [*Kilgore* v. *People*] 76 Ill 548."

3 McQuillin Municipal Corporations (3d ed), at pp 499, 500, states:

"Laws providing for pensions for municipal officers and employees are generally sustained as valid and constitutional, on the ground that pensions are in the nature of compensation for services previously rendered and for which pay was withheld to induce long-continued and faithful service."

"The moneys to be paid to retiring employees under the [retirement pension] amendment are not gratuities. They are annuities, commonly called pensions, and in the nature of compensation for services theretofore rendered. Provisions for such payments to certain Federal officials and officers, soldiers and sailors, and the power of congress to

provide therefor, although not expressly conferred by the Federal Constitution, has been upheld. *United States* v. *Hall,* 98 US 343 (25 L ed 180). As before stated, such payments are provided for in laws like that before us in the belief on the part of those favoring their enactment that the city is benefited thereby, that more efficient service is rendered, and that the long continuous service necessary to bring the employees within its provisions justifies its payment as an economic proposition. [Citing cases.]  * * *  That the money which will be expended under this amendment is for 'a public purpose' we have no doubt. The annuities, or pensions if you please, to be paid under it are not gratuities but in the nature of additional compensation for valuable services rendered to the city." *Bowler* v. *Nagel,* 228 Mich 434, 440, 441 (37 ALR 1154).

The alternative, if these benefits which the plaintiffs receive were not to be considered as being part of plaintiffs' compensation, would seem to be that they would have to be considered as gratuities. If that were true, it would follow that the retirement pension plan here involved would be *ultra vires* and void, the city lacking the power to pay gratuities, under *Bowler* v. *Nagel, supra.*

In *McGuire* v. *City of Dallas,* 141 Tex 170, 179, 180 (170 SW2d 722), the Texas supreme court, in a situation somewhat analogous to the case at bar, said:

"A comprehensive pension system for incorporated cities and towns has been authorized by statute. Article 6229–6243; 6243a as amended, 44th legislature. The constitutionality of the act was sustained by this court in the case of *Byrd* v. *City of Dallas,* 118 Tex 28 (6 SW2d 738), upon the theory that contributions made by the municipality and the employee to the pension fund were a part of the agreed compensation, hence, not a grant of public funds to private purposes, et cetera, as prohibited by our State constitution.  * * *

"It is clear therefore that contributions made by the municipality and the employee to the pension fund are a part of the agreed compensation between the parties and that the contribution made by the municipality is not a grant of public funds to private purposes, et cetera, as inhibited by the State constitution. Still the pension fund is nonetheless a public fund subject to the control of the legislature. Since the pension fund is a public fund subject to the control of the legislature we are of the opinion that firemen have the right to participate in a pension fund in case they desire to do so, and that such right is in addition to the rights given under the overtime and minimum wage law. Article 1583 [Penal Code]. It follows that the contributions made by the city of Dallas for the benefit of McGuire should not be considered as a part of the minimum wage required by the statute in review. The clothing allowance of $25 per year, we think, must be considered as a part of the compensation. This is necessary in order for the payment to be legal. We are not cognizant of any law which would authorize a city like Dallas to make the cash payment other than as a part of the compensation to be paid to the fireman."

"It has been stated generally that the establishment of a pension system for municipal officers and employees is a valid disposition of public funds when duly authorized by statute, and, more specifically, that the establishment of a pension system for municipal officers and employees, whereby, after serving a certain number of years or upon disablement from injuries received in the course of their duties, they are retired from active service and paid a certain proportion of their salaries for the remainder of their lives, is not an unconstitutional disposition of public moneys for private use when applied to officers and employees who have entered or continued in the service since the system went into effect. The pension in such a case is not a

gratuity, but a part of the stipulated compensation." 40 Am Jur, Pensions, § 16, p 972.

We conclude that the city commission had the authority, in fixing the compensation of firemen and policemen, to take into account the additional benefits to firemen and policemen when allowing them "like compensation" for like classifications. The trial court correctly held that the city commission did not exceed its authority under the charter.

Affirmed. A public question being involved, no costs awarded.

CARR, C. J., and BUTZEL, SMITH, SHARPE, REID, DETHMERS, and KELLY, JJ., concurred.