MICHIGAN COALITION OF STATE EMPLOYEE UNIONS v
STATE OF MICHIGAN

Docket No. 314048. Submitted June 12, 2013, at Lansing. Decided
August 13, 2013, at 9:10 a.m. Leave to appeal sought.

Michigan Coalition of State Employee Unions, International Union
UAW and Local 6000, Michigan Corrections Organization/SEIU,
Michigan Public Employees/SEIU Local 517M, Michigan State
Employees Association, AFSCME Local 5, Michigan AFSCME
Council 25, and others filed an action in the Court of Claims
against the state of Michigan, State Employees Retirement Sys-
tem, State Employees Retirement System Board, Department of
Technology, Management and Budget, Director of the Department
of Technology, Management and Budget, Director of Retirement
Services Office and the state Treasurer, claiming that challenged
portions of 2011 PA 264, which amended the State Employees'
Retirement Act (SERA), MCL 38.1 *et seq.*, were unconstitutional
because they regulated conditions of employment without the
State Civil Service Commission's approval as required by Const
1963, art 11, § 5, and challenging the manner in which overtime
was applied to the calculation of final average compensation. In
two orders, the trial court, Joyce A. Draganchuk, J., granted
plaintiffs summary disposition, determining that the 2011 PA 264
amendments to MCL 38.35a, and MCL 38.50a violated 1963 Const,
art 11, § 5 because the four percent contribution mandate altered
a rate of compensation or condition of employment for classified
civil servants, which only the commission had authority to do, not
the Legislature. The court concluded that MCL 38.1e, as amended
by 2011 PA 264, was similarly unconstitutional because the change
in how overtime was calculated for pension purposes constituted a
change in compensation without the required approval or input by
the commission. Defendants appealed.

The Court of Appeals *held*:

1. MCL 38.35a and MCL 38.50a, as amended by 2011 PA 264,
in part require employees hired before April 1, 1997, who had
maintained membership in the state's defined benefit plan to
choose to either contribute 4 percent of their income to that plan
or to switch to the 401(k) defined contribution plan that was

applicable to state employees hired on or after April 1, 1997 without a required contribution. Compensation is something given or received for services, debt, loss, injury, etc. Pension benefits, insurance premium payments, uniforms, and other fringe benefits are part of an employee's compensation. An employer's ability to legally discontinue pension benefits does not render the benefit outside the scope of compensation. However, if an employer changes the amount, nature, or quality of a pension benefit, the employer is changing the amount, nature, or quality of compensation, as well as a condition of employment. In this case, the ratifiers of the 1963 Constitution would have considered that the fringe benefits provided to civil service employees, which includes the pension plan offered as part of the compensation package, constituted rates of compensation or conditions of employment for purposes of the SERA. Changing the nature of the plan changed the nature of the benefit. The 2011 PA 264 amendments to MCL 38.35a and MCL 38.50a violate Const 1963, art 11, § 5 because only the commission, not the Legislature, has authority to change a civil service employees' rate of compensation or the conditions of employment.

2. MCL 38.1e(1), as amended by 2011 PA 264, alters the manner in which overtime compensation is applied to the calculation of final average compensation for purposes of retirement benefits. Rather than looking at the three highest-paid consecutive years for overtime, the amended statute looks back six years and averages the overtime for that period. Wages, hours, and other conditions of employment are mandatory subjects of collective bargaining and the phrase "wages, hours, and other terms and conditions of employment" is comparable to the phrases "rates of compensation" and "all conditions of employment" over which the commission has plenary authority under Const 1963, art 11, § 5. The 2011 PA 264 amendment to MCL 38.1e violates Const 1963, art 11, § 5 because the calculation of pension benefits is within the commission's authority, not the Legislature's.

3. Under MCL 8.5, if invalid or unconstitutional language can be deleted from an act and still leave it complete and operative, the remainder of the act is permitted to stand. The trial court erred by declaring 2011 PA 264 unconstitutional in its entirety without determining whether the MCL 38.1e, MCL 38.35a, and MCL 38.50a amendatory language deemed unconstitutional could be struck from the act while preserving the remainder.

Affirmed in part, reversed in part and remanded for further proceedings.

CONSTITUTIONAL LAW — CIVIL SERVICE COMMISSION — CIVIL SERVICE EMPLOYEES — RATES OF COMPENSATION — PENSION BENEFITS — CHANGE IN CALCULATION OF PENSION BENEFITS.

Under 1963 Const, art 11, § 5, only the Michigan Civil Service Commission may alter civil service employees' rates of compensation and conditions of employment; for purposes of the State Employees' Retirement Act, MCL 38.1 *et seq.*, compensation is something given or received for services, debt, loss, injury, etc.; pension benefits, insurance premium payments, uniforms, and other fringe benefits are part of an employee's rates of compensation or conditions of employment; the Legislature may not promulgate acts that alter a civil service employee's pension plan, including the manner in which overtime compensation is calculated for purposes of pension benefits, because the commission has plenary authority to alter rates of compensation and conditions of employment.

*William A. Wertheimer* for all plaintiffs.

*Michael B. Nicholson* and *Ava R. Barbour* for International Union UAW and Local 6000.

*Sachs Waldman, P.C.* (by *Mary Ellen Gurewitz* and *Marshall J. Widick*), for SEIU Local 517M and Michigan Corrections Organization.

*Frazer, Trebilcock, Davis & Dunlap, P.C.* (by *Michael E. Cavanaugh* and *Brandon W. Zuk*), for Michigan Coalition of State Employee Unions.

*Miller Cohen, PLC* (by *Robert D. Fetter* and *Keith D. Flynn*), for Michigan AFSCME Council 25.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, *Frank J. Monticello*, and *Larry F. Brya*, Assistant Attorneys General, for the State of Michigan, State Employees Retirement System, State Employees Retirement System Board, Department of Technology Management and Budget and its Director, Direct of Retirement Services Office, and State Treasurer.

Before: Owens, P.J., and Gleicher and Stephens, JJ.

Per Curiam. Defendants appeal by right the trial court's order holding 2011 PA 264 unconstitutional because it violates Const 1963, art 11, § 5. 2011 PA 264 amended the State Employees' Retirement Act (SERA), MCL 38.1 *et seq.* Plaintiffs challenged those changes that required employees hired before April 1, 1997, who had maintained membership in the state pension system (the "defined benefit pension plan" or "DB plan") to choose either to contribute 4 percent of their income to that plan or to switch to the 401(k) plan (the "defined contribution plan" or "DC plan," applicable for state employees hired on or after April 1, 1997) without a required contribution.[1] They also challenged the change in the way overtime is applied to the calculation of "final average compensation."

For the reasons set forth below, we affirm the trial court's determination that the challenged portions of 2011 PA 264 are unconstitutional because they are incompatible with Const 1963, art 11, § 5. However, we reverse the trial court's determination that 2011 PA 264 is void in its entirety and remand the case to the trial court for a determination regarding the severability of the remaining portions of 2011 PA 264, pursuant to MCL 8.5. On remand the trial court must determine

---

[1] The state retirement system is consistent with the common understanding of these terms:

> [A] "defined contribution plan" or "individual account plan" promises the participant the value of an individual account at retirement, which is largely a function of the amounts contributed to that account and the investment performance of those contributions. A "defined benefit plan," by contrast, generally promises the participant a fixed level of retirement income, which is typically based on the employee's years of service and compensation. [*LaRue v DeWolff, Boberg & Assoc, Inc* 552 US 248, 250 n 1; 128 S Ct 1020; 169 L Ed 2d 847 (2008).

whether any additional portions of the act must be deleted in light of this opinion, and if so, whether 2011 PA 264 can be permitted to stand as redacted.

I. FACTS

A. LEGISLATIVE BACKGROUND OF 2011 PA 264

As an initial matter, we take note of the history of SERA and the State Civil Service Commission ("the Commission"). The Commission was created in 1940 by a voter-initiated amendment to the 1908 Constitution that ended the wasteful spoils system of state employment rampant at the time. Subsequently, and with the Commission's authorization, the Legislature passed 1943 PA 240, which created SERA, a system for employee retirement benefits. The Commission's power and authority was subsequently modified by Const 1963, art 11, § 5 when the state Constitution was overhauled in 1963. That provision states, in relevant part:

> The commission shall classify all positions in the classified service according to their respective duties and responsibilities, fix rates of compensation for all classes of positions, approve or disapprove disbursements for all personal services, determine by competitive examination and performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service, make rules and regulations covering all personnel transactions, and regulate all conditions of employment in the classified service.

> \* \* \*

> Increases in rates of compensation authorized by the commission may be effective only at the start of a fiscal year and shall require prior notice to the governor, who shall transmit such increases to the legislature as part of

his budget. The legislature may, by a majority vote of the members elected to and serving in each house, waive the notice and permit increases in rates of compensation to be effective at a time other than the start of a fiscal year. Within 60 calendar days following such transmission, the legislature may, by a two-thirds vote of the members elected to and serving in each house, reject or reduce increases in rates of compensation authorized by the commission. Any reduction ordered by the legislature shall apply uniformly to all classes of employees affected by the increases and shall not adjust pay differentials already established by the civil service commission. The legislature may not reduce rates of compensation below those in effect at the time of the transmission of increases authorized by the commission.

The 2011 PA 264 provisions at issue in this case added language to MCL 38.1e, MCL 38.35a, and MCL 38.50a. SERA, as amended by 2011 PA 264, states in relevant part:

Sec 1e. (1) "Final average compensation" means the average of those years of highest annual compensation paid to a member during a period of 5 consecutive years of credited service; or if the member has less than 5 years of credited service, then the average of the annual compensation paid to the member during the member's total years of credited service. For a person whose retirement allowance effective date is on or after October 1, 1987, "final average compensation" means the average of those years of highest annual compensation paid to a member during a period of 3 consecutive years of credited service; or if the member has less than 3 years of credited service, then the average of the annual compensation paid to the member during the member's total years of credited service. *Beginning January 1, 2012, compensation used to compute final average compensation shall not include includable overtime compensation paid to the member on or after January 1, 2012, except that a member's final average compensation that is calculated using any time period on or after January 1, 2012 shall also include, as prorated for the time period, the*

*average of annual includable overtime compensation paid to the member during the 6 consecutive years of credited service ending on the same final date as used to calculate the final average compensation or, if the calculation date is before January 1, 2015, the average of the annual includable overtime compensation paid to the member on or after January 1, 2009 and before the final date as used to calculate the final average compensation.* [MCL 38.1e(1) (emphasis added).]

\* \* \*

Sec 35a. (1) Beginning with the first pay date after April 1, 2012 and ending upon the member's termination of employment or attainment date, as applicable under [MCL 38.50a], *each member who made the election under* [MCL 38.50a] *shall contribute an amount equal to 4% of his or her compensation to the employees' savings fund to provide for the amount of retirement allowance that is calculated only on the credited service and compensation received by that member after March 31, 2012.* The member shall not contribute any amount under this subsection for any years of credited service accrued or compensation received before April 1, 2012. [MCL 38.35a(1) (emphasis added).]

\* \* \*

Sec 50a. (1) *The retirement system shall permit each member who is a member on December 31, 2011 to make an election with the retirement system to continue to receive credit for any future service and compensation after March 31, 2012, for purposes of a calculation of a retirement allowance under this act. A member who makes the election under this section shall make the contributions prescribed in* [MCL 38.35a].

(2) As part of the election under subsection (1), the retirement system shall permit the member to make a designation that the contributions prescribed in [MCL 38.35a] shall be paid only until the member's attainment

date.[2] A member who makes the election under subsection (1) and who makes the designation under this subsection shall make the contributions prescribed in [MCL 38.35a] only until the member's attainment date. A member who makes the election under subsection (1) and who does not make the designation or rescinds the designation under this subsection shall make the contributions prescribed in section 35a until termination of employment.

＊    ＊    ＊

(4) *A member who does not make the election under this section* or who rescinds an election on or before the close of the election period under this section is subject to all of the following:

(a) He or she *ceases to receive credit for any future service and compensation for purposes of a calculation of a retirement allowance* as prescribed in [MCL 38.20j], beginning 12 midnight on March 31, 2012.

(b) He or she *becomes a qualified participant in Tier 2* beginning 12:01 a.m. on April 1, 2012.

(c) He or she shall receive a retirement allowance calculated under [MCL 38.20] that is based only on credited service and compensation allowed under [MCL 38.20j(1) and (2)]. This subdivision does not affect a person's right to health insurance coverage provided under [MCL 38.20d] or credit for service provided under [MCL 38.20j(3)].

(5) A member who makes the election under this section and the designation under subsection (2) and who does not rescind the election and designation on or before the close of the election period under this section is subject to all of the following:

(a) He or she ceases to receive credit for any future service and compensation for purposes of a calculation of a

---

[2] As defined in MCL 38.20j(9), " 'attainment date' means the final day of the pay period in which the member attains 30 years of credited service or the date the member terminates employment, whichever first occurs."

retirement allowance as prescribed in [MCL 38.20j], beginning 12 midnight on the member's attainment date.

(b) He or she becomes a qualified participant in Tier 2 beginning 12:01 a.m. on the day after the attainment date if he or she remains employed by this state.

(c) He or she shall receive a retirement allowance calculated under [MCL 38.20] that is based only on credited service and compensation allowed under [MCL38.20j(5) and (6)]. This subdivision does not affect a person's right to health insurance coverage provided under [MCL 38.20] or credit for service provided under [MCL 38.20j(7)].

\* \* \*

(9) As used in this section, "attainment date" means that term as defined in [MCL 38.20j]. [MCL 38.50a(1), (2), (4), (5), and (9) (emphasis added).]

In sum, SERA, as amended by 2011 PA 264, requires a DB member to elect to remain in the DB plan and contribute four percent of his or her compensation to the employees' savings fund until termination or until reaching his or her attainment date, if the latter was designated by the employee. MCL 38.50a(1) and MCL 38.35a(1). Accordingly, an election to remain in the DB plan would effectively reduce the employee's immediate compensation. The legislation also changed from three to six the number of years to be averaged when calculating the amount of overtime pay to be included when determining an employee's final average compensation. MCL 38.1e(1). Therefore, any employee who remained in the DB plan also had their final average compensation reduced. An employee who did not make the election was switched to the "Tier 2" DC plan, for which no contribution was required. MCL 38.50a(4).

II. PROCEDURAL HISTORY

Plaintiffs filed the instant lawsuit on February 13, 2012, alleging that 2011 PA 264 was enacted in violation of Const 1963, art 11, § 5 because it lacked the Commission's approval or input and it purported to regulate conditions of employment. Plaintiffs specifically alleged that the four percent contribution required of DB plan members violated Const 1963, art 11, § 5 because only the Commission has authority to fix rates of compensation, unless ²/₃ of the Legislature voted to reject or reduce an increase.

The parties filed cross motions for summary disposition, and the trial court heard oral argument on June 20, 2012. In its written opinion and order, the court concluded that "[b]y mandating that members contribute four percent of their compensation to the employees' savings fund, the Legislature reduced the compensation of classified civil servants—an act that is within the sphere of authority vested in the [Commission]." The trial court disagreed with defendants' argument that the term compensation, as used in art 11, § 5, meant only what employees are paid, noninclusive of fringe benefits, and cited opinions of the Attorney General that have held the term compensation includes fringe benefits. The court concluded that requiring members to pay four percent for a benefit that formerly had cost them nothing was not equivalent to a voluntary election to purchase service credit. The court also found that 2011 PA 264 was not cloaked in the legitimacy of the mandatory contribution provision of the original SERA, which was the cooperative and collaborative product of the Commission and the Legislature. By contrast, there was no evidence of Commission input to or approval of 2011 PA 264. The court concluded that, being in conflict with Const 1963, art 11, § 5, 2011 PA 264 was

void. Accordingly, the trial court denied defendants' motion and granted plaintiffs' motion for summary disposition.

The trial court held a hearing on defendants' motion to stay, but it denied the motion because the September 25, 2012 order was not a final order. Plaintiffs then moved for partial summary disposition on the claim that MCL 38.1e of 2011 PA 264 is unconstitutional because its purported change in the way overtime is calculated for pension purposes constitutes a change in a condition of employment that the Legislature made without the Commission's approval. Plaintiffs also sought voluntary dismissal without prejudice of any other claims arising out of 2011 PA 264. At the motion hearing, the trial court indicated that MCL 38.1e was unconstitutional for the same reasons that applied to Sections 35a and 50a and that "the point here is that the Civil Service Commission has plenary authority to fix rates of compensation and conditions of employment." The court reasoned that because "compensation includes fringe benefits which includes pension benefits," the Legislature "cannot alter these rates of compensation or conditions of employment without some form of approval, consent, or input from the Civil Service Commission." The trial court granted summary disposition on the issue of the unconstitutionality of MCL 38.1e "for the reasons stated on the record."

## II. ANALYSIS

### A. ISSUE PRESERVATION AND STANDARD OF REVIEW

"[A]n issue is not properly preserved if it is not raised before, addressed, or decided by the circuit court or administrative tribunal." *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). In

this case, the trial court expressly decided that the Legislature's enactment of MCL 38.1e, MCL 38.35a, and MCL 38.50a (changing the overtime calculation and requiring DB members to switch to the DC plan or to contribute 4 percent of their salaries to continue membership in the DB plan) violated Const 1963, art 11, § 5. Plaintiffs' other potential claims arising from the legislation were dismissed without prejudice. Accordingly, the only issue before this Court is whether the amendments to MCL 38.1e(1), MCL 38.35a, and MCL 38.50a by 2011 PA 264 without the approval or consent of the Commission violates Const 1963, art 11, § 5. See *Polkton Twp* 265 Mich App at 95.

This case requires the review of a decision on a motion for summary disposition, and also presents questions of statutory and constitutional interpretation. This Court reviews de novo all of these matters. *AFSCME Council 25 v State Employees' Retirement Sys*, 294 Mich App 1, 8; 818 NW2d 337 (2011).

> When interpreting a constitutional provision, the primary goal is to determine the initial meaning of the provision to the ratifiers, the people, at the time of ratification. *Nat'l Pride At Work, Inc v Governor*, 481 Mich 56, 67; 748 NW2d 524 (2008). "[T]he primary objective of constitutional interpretation, not dissimilar to any other exercise in judicial interpretation, is to faithfully give meaning to the intent of those who enacted the law." *Id*. To effectuate this intent, the appellate courts apply the plain meaning of the terms used in the constitution. *Toll Northville Ltd v Northville Twp*, 480 Mich 6, 11; 743 NW2d 902 (2008). When technical terms are employed, the meaning understood by those sophisticated in the law at the time of enactment will be given unless it is clear that some other meaning was intended. *Id*. To clarify the meaning of the constitutional provision, the court may examine the circumstances surrounding the adoption of the provision and the purpose sought to be achieved. *Traverse City Sch Dist*

*v Attorney General*, 384 Mich 390, 405; 185 NW2d 9 (1971). An interpretation resulting in a holding that the provision is constitutionally valid is preferred to one that finds the provision constitutionally invalid, and a construction that renders a clause inoperative should be rejected. *Id.* at 406. Constitutional convention debates are relevant, albeit not controlling.[3] *Lapeer Co Clerk v Lapeer Circuit Court*, 469 Mich 146, 156; 665 NW2d 452 (2003). Every provision in our constitution must be interpreted in light of the document as a whole, and "no provision should be construed to nullify or impair another." *Id.* "Statutes are presumed constitutional unless the unconstitutionality is clearly apparent." *Toll Northville Ltd*, 480 Mich at 11. The court's power to declare a law unconstitutional is exercised with extreme caution and is not exercised where serious doubt exists regarding the conflict. *Dep't of Transp v Tomkins*, 481 Mich 184, 191; 749 NW2d 716 (2008). [*AFSCME Council 25*, 294 Mich App at 8-9.]

B. DISCUSSION

1. MCL 38.35a AND MCL 38.50a

The central question with regard to these provisions of 2011 PA 264 is whether changing the nature of the contribution-free retirement plan constitutes a change in rate of compensation or a condition of employment. To that end, defendants first argue that MCL 38.35a and MCL 38.50a do not violate art 11, § 5 because in 1940, when the Commission was created, compensation was not understood to include fringe benefits, in part due to the fact that at that time pensions were a rarity. We disagree.

---

[3] Our Supreme Court has stated on this matter, "the Address to the People and the constitutional convention debates may be highly relevant in determining the meaning of particular constitutional provisions to the *ratifiers.*" *In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 490 Mich 295, 309 n 13; 806 NW2d 683 (2011).

Defendants rely on *Brown v Highland Park*, 320 Mich 108; 30 NW2d 798 (1948) for support.[4] In *Brown*, the Michigan Supreme Court determined that "a pension granted by public authorities is not a contractual obligation, that the pensioner has no vested right, and that a pension is terminable at the will of a municipality, at least while acting within reasonable limits." *Id.* at 114. In short, it concluded that a retiree had no right to enforce payment of pension benefits. Significantly, however, *Brown's* holding does not directly address whether the term compensation includes pension plans. Contrary to defendants' rarity arguments, the defendant in *Brown* had a pension provision in its city charter since 1918. *Id.* at 110. Additionally, *Brown* relied on *Bowler v Nagel*, 228 Mich 434, 436, 442; 200 NW 258 (1924), which upheld the pension plan enacted by Detroit for its civil servants in 1923. *Bowler* identified a number of cases upholding government service pension plans, including *United States v Hall*, 98 US 343; 25 L Ed 180 (1878). In addition, the federal Civil Service Retirement Act was enacted on May 22, 1920. PL 20-215, 41 Stat 614. Michigan enacted a teachers' retirement system in 1915,[5] and by 1940 also had in place statutory schemes for the retirement plans of firefighters and police officers, 1937 PA 345, and city library employees, 1927 PA 339. In sum, while *Brown* held that a retiree had no right to receive pension benefits (unless provided for by

---

[4] *Brown* was later superseded by Const 1963, art 9, § 24. *Advisory Opinion re Constitutionality of 1972 PA 258*, 389 Mich 659, 662-663; 209 NW2d 200 (1973).

[5] In *Attorney General v Chisholm*, 245 Mich 285, 291-292; 222 NW 761 (1929), the Supreme Court held that 1915 PA 174, which enacted the teachers' retirement system, had been repealed by 1927 PA 319, and that even if repealment had been an unintended effect of the 1927 act, it was up to the Legislature to correct it. Two months later, the Legislature enacted another teachers' retirement system, 1929 PA 5.

contract), it in no way established that "pensions did not generally exist" in 1940.

However, regardless of the meaning of the term compensation in 1940, the issue before the Court today is what was the common understanding of the citizens who adopted the 1963 Constitution. *Nat'l Pride At Work, Inc*, 481 Mich at 67 (noting that when interpreting a constitutional provision, the primary goal is to determine the initial meaning of the provision to the ratifiers, the people, at the time of ratification). When the 1963 Constitution was considered, SERA had been in place for twenty years. In *Kane v City of Flint*, 342 Mich 74, 83; 69 NW2d 156 (1955), our Supreme Court upheld the city's authority to take into account the additional retirement pension benefits granted firefighters and police officers when the city created for its employees a "like compensation" pay system that differentiated the compensation of firefighters and police officers from other city employees. The Court noted that the applicable ordinance mandated that, "[l]ike classifications of work are to receive like compensation," and the plaintiff-firefighters argued that the pay differential violated this requirement. *Id*. at 79. The plaintiffs argued that compensation included only salaries or wages. The Court disagreed with such a narrow definition of the term compensation:

> We do not agree with plaintiffs that charter retirement pensions, insurance premium payments and the furnishing of uniforms cannot be considered as "compensation." Nor is there merit to plaintiffs' argument that such benefits, admittedly still being received by the plaintiffs, cannot be included as compensation on the ground that they are not contractual and that the city can discontinue them. *Conceding that the city can legally discontinue retirement pension benefits, group insurance and furnishing of uni-*

*forms, these still are benefits while being received by the firemen and policemen. [Id. at 80 (emphasis added).]*

The Court then examined secondary authority and concluded that pension benefits are part of the employees' compensation. *Id.* at 80-81, citing Cyclopedic Law Dictionary (3d ed), p 211, 3 McQuillin Municipal Corporations (3d ed), pp 499-500, and *Bowler*, 228 Mich at 440-441. The Court reasoned:

> The alternative, if these benefits which the plaintiffs receive were not to be considered as being part of plaintiffs' compensation, would seem to be that they would have to be considered as gratuities. If that were true, it would follow that the retirement pension plan here involved would be *ultra vires* and void, the city lacking the power to pay gratuities, under *Bowler*. [*Kane*, 342 Mich at 81.]

*Kane* did not purport to overrule *Brown*, and the outcomes of the two cases are not in direct conflict. *Brown* was concerned with paying benefits to *pensioners*; *Kane* dealt with the definition of the term compensation in the context of *current employees* and whether that included the existence of a pension system from which future benefits might be paid. Additionally, *Kane* specifically concluded that the city's ability to legally discontinue pension benefits did not render those benefits outside the scope of compensation.

Indeed, more recent case law also supports the proposition that an employee's compensation includes fringe benefits. In *AFSCME Council 25*, 294 Mich App at 26 n 3, this Court addressed the issue of "the validity of the *process* of removing three percent of employee compensation and directing it to retiree health care without regard to Const 1963, art 11, § 5." Consistent with *Kane*, the Court defined compensation as " 'something given or received for services, debt, loss, injury, etc.' " *Id.* at 23, quoting *Random House Webster's College*

*Dictionary* (2001), p 271. Under *Kane*, an employer's provision of a pension plan to employees is a benefit similar to insurance premium payments or uniforms. Thus, if the employer changes the amount, nature, or quality of that benefit, then the employer is changing the amount, nature, or quality of compensation.

Moreover, defendants make no argument that the nature of the pension plan is not within the definition of "conditions of employment." See *Mt Clemens Fire Fighters Union, Local 838, IAFF v City of Mt Clemens*, 58 Mich App 635, 645; 228 NW2d 500 (1975) (holding that in the labor law context "a change in the retirement plan constitutes a change in conditions of employment"). Thus, whether it concerns "rates of compensation" or "conditions of employment," the statutory pension plan provisions may not be altered through 2011 PA 264 by the Legislature acting without the approval of the Commission.

In sum, we conclude that the ratifiers in 1963 would have considered rates of compensation to include fringe benefits provided to civil service employees, and that would include the pension plan offered as part of the compensation package. Changing the nature of the plan changes the nature of the benefit, and thus it amounts to a change in the rate of compensation or in the conditions of employment. This is within the authority of the Commission, not the Legislature, and therefore MCL 38.35a and MCL 38.50a are unconstitutional.

### 2. MCL 38.1e

MCL 38.1e, unlike MCL 38.35a and MCL 38.50a, addresses whether overtime pay is included in the definition of compensation. Before amendment, MCL 38.1e computed "final average compensation" using the yearly average of the employee's highest three-

consecutive-year compensation. In other words, the total of earnings in whatever three-year period in which the employee earned the most was divided by three to arrive at the average annual compensation for that period. Under 2011 PA 264's amendment, this part of the calculation remains the same, but now overtime is treated differently. Instead of looking at the three highest-paid consecutive years for overtime, the calculation looks back six years and averages the overtime for that period.

We conclude that because MCL 38.1e—like MCL 38.35a and MCL 38.50a—makes a change to a fringe benefit, it improperly invades the authority of the Commission and therefore is unconstitutional. Mandatory subjects of collective bargaining are those concerning "wages, hours, and other terms and conditions of employment." MCL 423.215(1). The phrase "wages, hours, and other terms and conditions of employment" is comparable to the "rates of compensation" and "all conditions of employment" over which the Commission has plenary authority. Const 1963, art 11, § 5; *Womack-Scott v Dep't of Corrections*, 246 Mich App 70, 79; 630 NW2d 650 (2001). Thus, we conclude that the calculation of pension benefits is within the authority of the Commission, not the Legislature.

We agree with defendants that the Commission's authority over legislation affecting state employees is not unlimited, and that "there have been many statutes found constitutional when they affected State civil service employees despite of the Commission's authority under article 11, § 5." For example, defendant notes that the Civil Rights Commission has authority over the same state employees regarding issues of discrimination, *Dep't of Civil Rights ex rel Jones v Dep't of Civil Serv*, 101 Mich App 295; 301 NW2d 12 (1980); that

"compensation," as used in art 11, § 5 does not include the disability compensation included in MCL 330.1113, *Oakley v Dep't of Mental Health (On Remand)*, 136 Mich App 58; 355 NW2d 650 (1984); and that other statutes affecting civil service workers are constitutional, *Dep't of Transp v Brown*, 153 Mich App 773; 396 NW2d 529 (1986), *Walters v Dep't of Treasury*, 148 Mich App 809; 385 NW2d 695 (1986), and *Marsh v Civil Serv Dep't*, 142 Mich App 557; 370 NW2d 613 (1985). However, 2011 PA 264 is distinguishable from the types of legislation validated in the *Jones, Walters, Marsh, Oakley*, and *Dep't of Transp* cases cited by defendants, because the legislation at issue in those cases concerned laws applicable to all employers, public and private. The role of the state in those cases was that of "employer," and in the context of taxes, civil rights, and occupational safety, the employer of civil servants is treated in large part like any other employer. However, the Legislature cannot control the specific terms of a private employer's retirement plan (nor that of a public employer at the municipal or county level). Legislation that attempts to exercise that kind of control over state employees would seem to usurp the power the ratifiers intended to give the Commission.

### 3. SEVERABILITY AND THE DISPOSITION OF THE CASE

Relying on *AFSCME Council 25*, 294 Mich App at 29, the trial court concluded that 2011 PA 264 unconstitutionally conflicted with Const 1963, art 11, § 5, and declared it void. But *ASFCME Council 25* did not declare an entire *public act* unconstitutional. In *In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 490 Mich at 345-349, the Michigan Supreme Court addressed the severability of the parts of 2011 PA 38 it found unconstitutional. There, as here,

the public act contained no express severability clause. Accordingly, the Court applied the severability provision of MCL 8.5, which states, in relevant part:

> If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable.

The Supreme Court acknowledged this when it "recognized that it is the law of this State that if invalid or unconstitutional language can be deleted from an ordinance and still leave it complete and operative then such remainder of the ordinance be permitted to stand." *In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 490 Mich at 345 (quotation marks, brackets, and citation omitted). Accordingly, it struck from the act only the language found to be in contravention of the Constitution. *Id.* at 347-349.

In the instant case, the act includes amendments to other provisions in SERA that refer to the unconstitutional sections. However, the parties have not given guidance regarding the validity of specific language that might be struck from 2011 PA 264 while preserving the remainder. Accordingly, we reverse the trial court's determination that 2011 PA 264 is void in its entirety and remand the case to the trial court for a determination regarding the severability of the remaining portions of 2011 PA 264. Specifically, we remand for a determination regarding whether additional portions of the act must be deleted in light of this opinion, and if so, whether such deletions "still leave [2011 PA 264] complete and operative" and thus permitted to stand. *In re*

*Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 490 Mich at 345 (quotation marks and citation omitted).

Affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs, a public question being involved.

OWENS, P.J., and GLEICHER and STEPHENS, JJ., concurred.