# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

## MICHIGAN COALITION OF STATE EMPLOYEE UNIONS v STATE OF MICHIGAN

Docket No. 147758. Argued January 13, 2015 (Calendar No. 2). Decided July 29, 2015.

The Michigan Coalition of State Employee Unions and others brought an action in the Court of Claims against the state of Michigan and various state agencies and officers, alleging that portions of 2011 PA 264, which amended the State Employees' Retirement Act (SERA), MCL 38.1 *et seq.*, were unconstitutional because the resulting changes to retirement benefits altered rates of compensation or conditions of employment, which are within the exclusive authority of the Civil Service Commission to regulate. The Court of Claims, Joyce A. Draganchuk, J., granted plaintiffs' motion for summary disposition. The Court of Appeals, OWENS, P.J., and GLEICHER and STEPHENS, JJ., affirmed in part, reversed in part, and remanded, holding that SERA retirement benefits were properly classified as both "rates of compensation" and "conditions of employment," neither of which was subject to legislative alteration. 302 Mich App 187 (2013). The Supreme Court granted plaintiffs' application for leave to appeal. 495 Mich 921 (2014).

In an opinion by Chief Justice YOUNG, joined by Justices MARKMAN, ZAHRA, and VIVIANO, the Supreme Court *held*:

The amendment of SERA in 2011 PA 264 did not infringe the Civil Service Commission's authority to fix rates of compensation because the ratifiers of Michigan's 1963 Constitution did not understand that phrase to include pensions or other fringe benefits. When the commission acquiesced in the application of SERA to the employees of the civil service system, the presumed infringement of 2011 PA 264 presented no constitutional problem. The commission's authority to regulate did not permit the commission to enact, amend, or maintain the laws of this state.

1. The term "rates of compensation" as used in Const 1963, art 11, § 5 was not understood by the ratifiers to include fringe benefits such as pensions. Textual indicators in the constitution uniformly indicate that "rates of compensation" was commonly understood to include only salaries and wages. This understanding was confirmed in various parts of the Constitution, the Address to the People, and the transcript of the constitutional convention debates. Because 2011 PA 264 did nothing to change an employee's salary or wages, it did not implicate the commission's constitutional authority over classified civil servants' rates of compensation.

2. The Civil Service Commission did not have the authority to require the Legislature to exercise its lawmaking power regarding conditions of employment. Assuming for the limited purpose of this case that a pension is a condition of employment as used in Const 1963, art 11, § 5, ¶ 4, and that the commission's authority under Const 1963, art 11, § 5 to regulate all conditions of employment included the authority to establish, maintain, and amend a pension plan, the commission had no authority to prevent the Legislature from enacting 2011 PA 264 any more than it had authority to compel the enactment of SERA itself because either act would have constituted an unconstitutional exercise of legislative authority under Const 1963, art 3, § 2. The commission's authority was part of the executive branch power, which could not be used to enact or amend statutes because that power was vested exclusively in the Legislature. Likewise, the commission could not mandate appropriations relating to conditions of employment, because the appropriation power also resided in the Legislature. In order for one branch of government to have authority of a character typically associated with another branch, the Constitution must explicitly grant that authority, and there was no provision in Const 1963, art 11, § 5, ¶ 4 that granted the commission any legislative or appropriation authority when regulating conditions of employment. By the same logic, the commission had no explicit authority to require the Legislature to exercise its lawmaking power regarding conditions of employment. When the commission wishes to regulate conditions of employment, it must proceed within its own sphere, using its own constitutionally provided tools.

3. The Legislature did not violate the Civil Service Commission's constitutional authority by enacting 2011 PA 264. Plaintiff unions complained of an infringement on the commission's authority. Yet the commission itself had acquiesced in the alleged infringement. For as long as SERA has existed, the commission has, by its own formally promulgated rules, acquiesced in the application of such retirement programs provided by law to members of the civil service. That acquiescence by Commission rule has never been rescinded. Because the constitutional authority allegedly infringed by 2011 PA 264 could only be held by the commission, plaintiffs' objections failed to establish a basis for relief.

Reversed and remanded to the Court of Claims for further proceedings.

Justice KELLY, concurring in part and dissenting in part, concurred in the decision to reverse the Court of Appeals judgment and remand the case to the Court of Claims, and agreed that the Legislature did not infringe the commission's authority to "fix rates of compensation" under Const 1963, art 11, § 5 by enacting 2011 PA 264 because the ratifiers of the 1963 Constitution understood that phrase to authorize the commission to establish job-specific salaries and pay schedules, not pensions or other fringe benefits. However, she disagreed with the majority's decision to uphold 2011 PA 264 on the basis of the commission's continued acquiescence in SERA because the majority assumed without deciding, or "assumed for purposes of this case," that employees' pensions were conditions of employment within the meaning of Const 1963, art 11, § 5. Instead, she would have addressed that very issue as necessary to the question on which this Court specifically granted leave and upheld 2011 PA 264 on the ground that it did not regulate a condition of employment under Const 1963, art 11, § 5.

Justice McCORMACK, concurring in part and dissenting in part, concurred in the decision to reverse the Court of Appeals judgment and remand the case to the Court of Claims, but would

have held that pensions are conditions of employment for the purposes of Const 1963, art 11, § 5. Furthermore, because the commission, as the affected constitutional actor, is not a party to this lawsuit, has not otherwise officially objected to the legislature's action, and appears by its own official pronouncement to have acceded to the legislation, she would have refrained from commenting on how the commission's power to regulate pensions as a condition of employment within the civil service could be reconciled with the Legislature's exclusive authority to make appropriations.

Justice BERNSTEIN, dissenting, would have affirmed the Court of Appeals judgment and held that the challenged provisions of 2011 PA 264 were an unconstitutional violation of the separation-of-powers doctrine as applied to employees in the classified civil service because pensions fall under the commission's plenary authority over conditions of employment under Const 1963, art 11, § 5 and the commission did not acquiesce to the Legislature's intrusion into its constitutional sphere of authority.

©2015 State of Michigan

# OPINION

Chief Justice:
Robert P. Young, Jr.

Justices:
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein

FILED July 29, 2015

STATE OF MICHIGAN

SUPREME COURT

MICHIGAN COALITION OF STATE
EMPLOYEE UNIONS et al.,

      Plaintiffs-Appellees,

v

No. 147758

STATE OF MICHIGAN et al.,

      Defendants-Appellants.

BEFORE THE ENTIRE BENCH

YOUNG, C.J.

      Plaintiffs are several unions that represent employees in the state classified civil service. Their members are the beneficiaries of and participants in Michigan's retirement system established under the State Employees Retirement Act (SERA).[1] SERA was enacted in 1943 and has been amended many times since. Plaintiffs challenge the most

---

[1] MCL 38.1 *et seq.*

recent SERA amendment, 2011 PA 264. They contend that, because 2011 PA 264 increases the cost and reduces the accumulation of future pension benefits previously recognized, it unconstitutionally infringes the exclusive constitutional powers of the Civil Service Commission (commission) to manage and oversee the civil service system. The commission has never formally opposed or attempted to repudiate the application of SERA or any of its several amendments, including 2011 PA 264, to the employees of the state classified civil service.

While the commission has considerable constitutional powers to manage the civil service system and to preserve its sphere of constitutional authority, the commission has no legislative powers. It may neither enact legislation nor revise an enactment, nor may it dictate that the Legislature repeal or modify an enactment. Therefore, we hold that because the commission has acquiesced in the application of SERA to the employees of the civil service system, plaintiff's objections fail to establish a basis for relief.

We reverse the judgment of the Court of Appeals and remand to the Court of Claims for further proceedings consistent with this opinion.

## I. FACTS

### A. BACKGROUND

In 1940, through an initiative petition, the people of Michigan ratified a constitutional amendment establishing a state civil service system.[2] Const 1908, art 6, § 22 became effective on January 1, 1941, and provided in part:

---

[2] For a discussion of the motivations behind the creation of the state civil service, see, e.g., *Council No 11, AFSCME v Civil Serv Comm*, 408 Mich 385, 397-401; 292 NW2d 442 (1980).

The commission shall classify all positions in the state civil service according to their respective duties and responsibilities, fix rates of compensation for all classes of positions, approve or disapprove disbursements for all personal services, determine by competitive performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the state civil service, make rules and regulations covering all personnel transactions, and regulate all conditions of employment in the state civil service. No person shall be appointed to or promoted in the state civil service who has not been certified as so qualified for such appointment or promotion by the commission. No removals from or demotions in the state civil service shall be made for partisan, racial, or religious considerations.

The administration of the commission's powers shall be vested in a state personnel director who shall be a member of the state civil service and who shall be responsible to and selected by the commission after open competitive examination.

Shortly after its creation, the commission promulgated a rule requiring its state personnel director to recommend that the Legislature establish a retirement plan for classified employees:

RETIREMENT. The director, in conjunction with appointing authorities, other supervising officials, the state budget director and members of the legislature, shall prepare and submit to the commission for approval and subsequent recommendation to the governor and the legislature for adoption by law, a comprehensive and workable contributory retirement system for employees in the state civil service.[3]

Apparently, the commission thereafter designed a model retirement plan, which it submitted to the Governor for comment. However, before the Governor completed his review of the commission's plan,[4] the precursor to SERA was introduced in the House of

---

[3] Civ Serv R XXXVIII (1941) (emphasis added).

[4] The Governor's letter to the commission's state personnel director, dated February 18, 1943, acknowledged receipt of the commission's proposed retirement plan on February 1, 1943, and noted that he was assigning someone to review the submissions who would communicate with the commission at a future date.

3

Representatives as House Bill No. 177.[5] SERA was signed into law as 1943 PA 240, and was codified as MCL 38.1 *et seq*.

Subsequently, the people ratified a new Constitution in 1963, which altered somewhat the way that the commission operates. Const 1963, art 11, § 5, ¶ 4, remains largely unchanged from Const 1908, art 6, § 22, and provides in relevant part:

> The commission *shall* classify all positions in the classified service according to their respective duties and responsibilities, *fix rates of compensation for all classes of positions*, approve or disapprove disbursements for all personal services, determine by competitive examination and performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service, make rules and regulations covering all personnel transactions, and *regulate all conditions of employment* in the classified service.[6]

In the same section, however, the ratifiers introduced a new legislative check on compensation increases for civil servants authorized by the commission:

> Increases in rates of compensation authorized by the commission may be effective only at the start of a fiscal year and shall require prior notice to the governor, who shall transmit such increases to the legislature as part of his budget. The legislature may, by a majority vote of the members elected to and serving in each house, waive the notice and permit increases in rates of compensation to be effective at a time other than the start of a fiscal year. *Within 60 calendar days following such transmission, the legislature may, by a two-thirds vote of the members elected to and serving in each house, reject or reduce increases in rates of compensation authorized by the commission.* Any reduction ordered by the legislature shall apply uniformly to all classes of employees affected by the increases

---

[5] House Bill 177 was dated February 15, 1943. It automatically included employees in the classified civil service, but also provided that "any state employee whose position is not included in the state civil service may become a member by filing a written notice . . . ." 1943 HB 177 at § 15(a).

[6] Emphasis added.

4

and shall not adjust pay differentials already established by the civil service commission. The legislature may not reduce rates of compensation below those in effect at the time of the transmission of increases authorized by the commission.[7]

Following the ratification of the 1963 Constitution, the commission replaced its initial retirement rule, Rule XXXVIII, but its replacement did not purport to fundamentally change the commission's *advisory* role in SERA's administration:

> Section 31 – Retirement.
>
> 31.1 Cooperation With State Retirement Board. –
> The state personnel director shall *cooperate* with the State Employees' Retirement Board in maintaining a comprehensive contributory retirement system for state civil service employees.[8]

The commission's rules have remained substantively unchanged in this regard.[9]

## B. 2011 PA 264

In 2011, the Legislature amended SERA.[10] Relevant to the instant case are the amendments of MCL 38.1e, MCL 38.35a, and MCL 38.50a. Broadly speaking, the amendments (1) potentially reduce the value of overtime compensation as it factors into a member's pension formula for future benefits,[11] and (2) require members to make an

---

[7] Const 1963, art 11, § 5, ¶ 7 (emphasis added).

[8] Civ Serv R 31.1 (1963) (emphasis added).

[9] Civil Service Rule 2-17.1 currently provides that "[t]he state personnel director shall cooperate with the state employees' retirement board in maintaining a comprehensive retirement system for classified employees." It was last amended effective April 29, 2004.

[10] See 2011 PA 264.

[11] As amended, MCL 38.1e provides in part:

election between paying to remain in a defined benefit plan (that was previously free), or instead joining a "Tier 2," 401(k)-style defined contribution plan.[12]

_____

> Beginning January 1, 2012, compensation used to compute final average compensation shall not include includable overtime compensation paid to the member on or after January 1, 2012, except that a member's final average compensation that is calculated using any time period on or after January 1, 2012 shall also include, as prorated for the time period, the average of annual includable overtime compensation paid to the member during the 6 consecutive years of credited service ending on the same final date as used to calculate the final average compensation or, if the calculation date is before January 1, 2015, the average of the annual includable overtime compensation paid to the member on or after January 1, 2009 and before the final date as used to calculate the final average compensation.

[12] As amended, MCL 38.35a(1) provides in part:

> Beginning with the first pay date after April 1, 2012 and ending upon the member's termination of employment or attainment date, as applicable under section 50a [MCL 38.50a], *each member who made the election under section 50a shall contribute an amount equal to 4% of his or her compensation to the employees' savings fund to provide for the amount of retirement allowance that is calculated only on the credited service and compensation received by that member after March 31, 2012*. The member shall not contribute any amount under this subsection for any years of credited service accrued or compensation received before April 1, 2012. [Emphasis added.]

As amended, MCL 38.50a provides in part:

> (1) The retirement system shall permit each member who is a member on December 31, 2011 to make an election with the retirement system to continue to receive credit for any future service and compensation after March 31, 2012, for purposes of a calculation of a retirement allowance under this act. A member who makes the election under this section shall make the contributions prescribed in section 35a.

> \* \* \*

6

## II. PROCEDURAL HISTORY

Plaintiffs argue that SERA retirement benefits are "rates of compensation" or, alternatively, "conditions of employment," as these terms are used in Const 1963, art 11, § 5. Accordingly, plaintiffs claim, SERA retirement benefits are not subject to legislative change because the regulation of "rates of compensation" and "conditions of

---

(4) A member who does not make the election under this section or who rescinds an election on or before the close of the election period under this section is subject to all of the following:

(a) He or she ceases to receive credit for any future service and compensation for purposes of a calculation of a retirement allowance as prescribed in section 20j, beginning 12 midnight on March 31, 2012.

(b) He or she becomes a qualified participant in Tier 2 beginning 12:01 a.m. on April 1, 2012.

(c) He or she shall receive a retirement allowance calculated under section 20 that is based only on credited service and compensation allowed under section 20j(1) and (2). This subdivision does not affect a person's right to health insurance coverage provided under section 20d or credit for service provided under section 20j(3).

(5) A member who makes the election under this section and the designation under subsection (2) and who does not rescind the election and designation on or before the close of the election period under this section is subject to all of the following:

(a) He or she ceases to receive credit for any future service and compensation for purposes of a calculation of a retirement allowance as prescribed in section 20j, beginning 12 midnight on the member's attainment date.

(b) He or she becomes a qualified participant in Tier 2 beginning 12:01 a.m. on the day after the attainment date if he or she remains employed by this state.

7

employment" of employees in the classified civil service is within the exclusive and plenary authority of the commission.

The Court of Claims held that 2011 PA 264 was unconstitutional. The Court of Appeals affirmed the ruling of the Court of Claims, concluding that SERA retirement benefits are properly classified as both "rates of compensation" and "conditions of employment," neither of which is subject to legislative alteration.[13] The state appealed and we granted leave, directing the parties to brief "whether 2011 PA 264 is unconstitutional, in whole or in part, in violation of Const 1963, art 11, § 5."[14]

## III.  STANDARD OF REVIEW

This Court reviews the grant or denial of summary disposition de novo.[15] Questions of constitutional and statutory interpretation also are reviewed de novo.[16]

## IV.  ANALYSIS

As noted, plaintiffs make two alternative arguments that by enacting 2011 PA 264, the Legislature infringed the commission's constitutional authority. First, plaintiffs allege that the pension accrual characteristics altered by 2011 PA 264 affect classified employees' "rates of compensation" under Const 1963, art 11, § 5, and that the Legislature cannot act in that area. Second and in the alternative, plaintiffs allege that the

---

[13] *Mich Coalition of State Employee Unions v Michigan*, 302 Mich App 187; 838 NW2d 708 (2014).

[14] *Mich Coalition of State Employee Unions v Michigan*, 495 Mich 921 (2014).

[15] *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

[16] *Hunter v Hunter*, 484 Mich 247, 257; 771 NW2d 694 (2009).

8

pension accrual characteristics affected by 2011 PA 264 are "conditions of employment" under Const 1963, art 11, § 5. We address these two arguments in turn.

A. "RATES OF COMPENSATION"

As used in article 11, § 5, we conclude that the term "rates of compensation" was not understood by the ratifiers of the 1963 constitution to include fringe benefits such as pensions; rather, the common understanding of the term at that time was that it included only salaries and wages.

Our primary goal in construing a constitutional provision is to give effect to the intent of the people of the state of Michigan who ratified the Constitution, by applying the rule of "common understanding."[17] We locate the common understanding of constitutional text by determining the plain meaning of the text as it was understood at the time of ratification.[18] Interpretation of a constitutional provision also takes account of "the circumstances leading to the adoption of the provision and the purpose sought to be accomplished."[19] The Address to the People, which was distributed to Michigan citizens in advance of the ratification vote and which explained in everyday language what each

---

[17] See *Goldstone v Bloomfield Twp Pub Library*, 479 Mich 554, 558-559, 737 NW2d 476 (2007) ("When interpreting constitutional provisions, our primary objective is to realize the intent of the people by whom and for whom the constitution was ratified. That is, we seek the 'common understanding' of the people at the time the constitution was ratified. This involves applying the plain meaning of each term used at the time of ratification, unless technical, legal terms are used.") (citations and quotation marks omitted).

[18] *Wayne Co v Hathcock*, 471 Mich 445, 468-469; 648 NW2d 765 (2004).

[19] *People v Tanner*, 496 Mich 199, 226; 853 NW2d 653 (2014) (citation omitted).

9

provision of the proposed new Constitution was intended to accomplish,[20] and, to a lesser degree, the constitutional convention debates are also relevant to understanding the ratifiers' intent.[21]

Textual indicators in the Constitution uniformly indicate that the phrase "rates of compensation," as used in article 11, § 5, was commonly understood to include only salaries and wages, i.e., amounts paid out to employees in a paycheck.[22] For instance, article 11, § 5 only reserves to the commission the authority to "fix *rates* of compensation," rather than "compensation" generally. In the context of compensation for one's employment-related services, "rate" was defined as the "a wage paid on a

---

[20] *Walker v Wolverine Fabricating & Mfg Co, Inc*, 425 Mich 586, 597; 391 NW2d 296 (1986) (stating that the Address "sought to explain each provision in terms the common person could understand").

[21] *Lapeer Co Clerk v Lapeer Circuit Court*, 469 Mich 146, 156; 665 NW2d 452 (2003); see also *Regents of the Univ of Mich v Michigan*, 395 Mich 52, 60; 253 NW2d 1 (1975) (establishing that the Address to the People is superior to the constitutional convention debates as an interpretive tool).

[22] We acknowledge that, in isolation, the word "compensation" has a broad enough meaning to encompass pensions and other fringe benefits. See *Random House Dictionary of the English Language, Unabridged Edition* (1966) (defining "compensation" as "something given or received as an equivalent for services"), def 3. Other cases addressing "compensation" in other contexts, as well as the Court of Appeals below, recognize this. See, e.g., *Kane v City of Flint*, 342 Mich 74; 69 NW2d 156 (1955) (addressing municipalities' authority to define pensions as compensation). However, we are here concerned with the entire phrase, "rates of compensation," as that phrase is used in its constitutional context and as specifically understood by the ratifiers of our Constitution.

specified time basis: *a salary figured on an hourly rate*."[23] "Wages," in turn, was defined as "money that is paid or received for work or services, *as by the hour, day, or week*."[24]

This understanding is confirmed elsewhere. Highly significant to our assessment is the Address to the People. Apart from the text of the Constitution itself, the Address provides an authoritative contemporary construction of the constitutional provisions that the citizens of Michigan were asked to vote on.[25] The Address confirms that "rates of compensation" did not include fringe benefits such as pensions. As previously stated, the current paragraph 7 of article 11, § 5 gives the Legislature a supermajority veto over the commission's proposed changes to "rates of compensation." The Address explains that this provision "provides for limited legislative control of *wage increases* under specified circumstances."[26] The Address alternatively explains the same legislative control as pertaining to "the total level of state *payroll*[.]"[27] "Compensation" was thus directly understood as the money employees received in their paychecks.

Moreover, the portion of the Address explaining article 11, § 5 states: "Of special interest to civil service personnel is the provision in Sec. 24, Article IX, of the proposed

---

[23] *Random House Unabridged Dictionary*, def 11.

[24] *Id*., def 1 (emphasis added).

[25] See *Regents of the Univ of Michigan*, 395 Mich at 60 ("The reliability of the 'Address to the People' . . . lies in the fact that it was approved by the general convention on August 1, 1962 as an explanation of the proposed constitution. The 'Address' also was widely disseminated prior to adoption of the constitution by vote of the people.").

[26] Address to the People, 2 Official Record, Constitutional Convention 1961, p 3405 (emphasis added).

[27] *Id*. at 3359 (emphasis added).

11

constitution which specifies that pension plans and retirement systems of the state shall be contractual obligations 'which shall not be diminished or impaired.' "[28] The ratifiers were thus aware of the special independent status of pensions created for civil servants, as well as the new obligation imposed to protect any such pensions. This portion of the Address is especially noteworthy because, in discussing paragraph 4 of article 11, § 5, the Address directs the ratifiers' attention elsewhere to the provisions of article 9, § 24 that expressly discuss pensions, while simultaneously equating "rates of compensation" with wages. We conclude that this explanation confirms our textual construction based on the common understanding of "rates of compensation."

Finally, although of lesser import than the Address, the transcript of the constitutional convention debates further confirms that the common understanding of "rates of compensation" did not extend to pensions. The record is replete with references to "wages" and "salaries" during discussion of the Legislature's then-proposed veto power over commission increases to "rates of compensation,"[29] and there are no relevant references to "pensions" or "retirement."

---

[28] *Id*. at 3405.

[29] For example, one proponent of the amendment described "controlling abuses in a *salary* classification" as, "in other words, the right to fix compensation . . . ." 1 Official Record, Constitutional Convention 1961, p 652. Regarding the phrase in article 11, § 5 providing that "[t]he legislature may not reduce rates of compensation," another delegate explained that this means that "the legislature is prohibited from reducing *salaries* . . . ." *Id*. at 640, quoting from the minority report of the committee on executive branch to Committee Proposal 22 (emphasis added); see also *id*. at 638 ("veto of *wage* determinations"; "control on the total number of dollars expended on *salaries*"), 639 ("*wage* rates"), and 664 ("*salary* fixing") (emphasis supplied throughout); accord Rules of the Civil Service Commission, § 17 (1972) (entitled "Compensation of Employees" and speaking solely in terms of salaries).

In conjunction with the text of article 11, § 5 discussed earlier, these historical sources confirm that the phrase "rates of compensation" referred to salaries and wages as opposed to fringe benefits such as the SERA pension program. Accordingly, we find no merit in plaintiffs' argument that 2011 PA 264 infringes the commission's authority to regulate "rates of compensation," because the SERA pension program does not affect "rates of compensation" as that term is used in Const 1963, art 11, § 5.

Notably, 2011 PA 264 does nothing to change the member's salary or wages.[30] With regard to overtime, 2011 PA 264 does not affect the availability of overtime, or the rate at which overtime is paid; it only affects how overtime factors into a member's pension formula.[31] Accordingly, because 2011 PA 264 does not affect "rates of compensation" by requiring changes to wages or salaries, it does not implicate the commission's constitutional authority over classified civil servants' "rates of compensation."

## B. "CONDITIONS OF EMPLOYMENT"

As an alternative to their argument that SERA pensions are "rates of compensation," plaintiffs allege that SERA pensions are "conditions of employment." They further allege that, as a result, any legislative action in the field of pensions requires commission approval in order to be constitutional. Plaintiffs also appear to allege that

---

[30] See MCL 38.50a, 38.63. It is true that those who elect to pay for what was formerly a free benefit would pay that money from their salary, but that does not change the actual salary one earns.

[31] See MCL 38.1e.

13

SERA was itself an "exercise" of commission authority.[32] For the limited purpose of this case, we assume without deciding that a pension is a "condition[] of employment" as used in paragraph four of Const 1963, art 11, § 5. Furthermore, for the limited purpose of this case, we also assume without deciding that the commission's authority under article 11, § 5 to "regulate all conditions of employment" includes the authority to establish, maintain, and amend a pension plan.[33] Regardless, we hold that the commission has no authority to prevent the Legislature from enacting 2011 PA 264 any more than it had authority to compel the enactment of SERA itself because either act would constitute an unconstitutional exercise of legislative authority.

1. THE COMMISSION LACKS POWER TO ENACT OR REVISE LEGISLATION

"The powers of government are divided into three branches: legislative, executive and judicial."[34] Although the commission is constitutionally created, and its proper

---

[32] See Plaintiff's Brief on Appeal, p 18, quoting *Hanlon v Civil Serv Comm*, 253 Mich App 710, 717; 660 NW2d 74 (2002), to support the proposition that the " 'valid exercise' " of commission power cannot be " 'taken away by the Legislature' " via 2011 PA 246; see also Plaintiff's Brief at 33 n 16 (asserting that the commission "*voluntarily involved* the Legislature" in creating SERA) (emphasis added). As explained, elsewhere in this opinion the notion that one branch of government can compel another to perform duties assigned to the second is a definitional violation of the separation of powers doctrine. Distinct from the method by which the commission regulates rates of compensation, which involves a budget communication with the Governor, the commission uses its Civil Service Rules as its primary means of regulating "conditions of employment."

[33] Even assuming such a power, the commission, having no legislative power to appropriate funds that are not part of its discretionary administrative budget, would be unlikely to be able to fund any retirement program it might create.

[34] Const 1963, art 3, § 2; see also *Civil Serv Comm of Mich v Auditor General*, 302 Mich 673, 684; 5 NW2d 536 (1942) (stating that "set[ting] up, even in effect, a fourth department of government contravenes" the predecessor provision to

14

functions are therefore constitutionally inviolable, the commission's authority is part of the executive branch power.[35] The commission "is vested with plenary powers in its sphere of authority."[36] Just as "any executive, legislative or judicial attempt at incursion into that 'sphere' would be unavailing,"[37] the commission itself may not act outside the bounds of its authority.[38] The Legislature—responsible for creating 2011 PA 264—and the commission are each constitutionally precluded from exercising the powers of the other: "No person exercising powers of one branch shall exercise powers properly belonging to another branch except as *expressly* provided in [the] constitution."[39]

---

Const 1963, art 3, § 2).

[35] Accord *Straus v Governor*, 459 Mich 526, 537; 592 NW2d 53 (1999) ("[T]he constitutional location of the [State Board of Education]'s functions within the executive branch is similar to that of . . . the Civil Service Commission, under Const 1963, art 11, § 5.") (citation and quotation marks omitted).

The people added the original civil service amendment to article VI of the 1908 Constitution, which article was entitled "Executive Department." Today, by executive order, the commission has been made a part of the executive Department of Technology, Management, and Budget. See Executive Order 2009-55, effective March 21, 2010.

[36] *Plec v Liquor Control Comm*, 322 Mich 691, 694; 34 NW2d 524 (1948).

[37] *Council No 11*, 408 Mich at 408; see also *Burton v Koch*, 184 Mich 250, 257; 151 NW 48 (1915) (holding that the court, in determining the constitutionality of a statute, can only determine whether constitutional restrictions have been exceeded).

[38] See, e.g., *Mich State AFL-CIO v Civil Serv Comm*, 455 Mich 720, 733-734; 566 NW2d 258 (1997) (holding that the commission lacks the authority to define union leave as "actual duty" time, when in fact it is off-duty time not subject to commission regulation).

[39] Const 1963, art 3, § 2 (emphasis added); *Judicial Attorneys Ass'n v Michigan*, 459 Mich 291, 304; 586 NW2d 894 (1998) ("The doctrine of separation of powers is a shield for each of the branches of government . . . .").

15

It scarcely bears repeating that the executive power cannot be used to enact actual statutes. That power is vested exclusively in the Legislature.[40] Likewise, the commission cannot mandate certain appropriations relating to conditions of employment, because the appropriative power also resides in the Legislature.[41] That said, it is true that the separation of powers doctrine does not rigidly confine all powers of a certain character to one branch or another. One branch of government may have authority of a character typically associated with another branch, as long as the Constitution "explicitly" grants that authority.[42] A compelling example in this context is Const 1963, art 11, § 5, ¶ 7, which provides the commission with the express authority to increase rates of compensation. Such increased rates must be included within the budget submitted by the Governor and are subject only to the supermajority veto of the Legislature. This is a singular, if limited, nonlegislative power to allocate taxpayer funds. This explicitly granted power stands in contrast to the absence of such power with respect to regulating conditions of employment. Article 11, § 5 cannot bear an interpretation that the ratifiers allocated any legislative or appropriative authority to the commission to

---

[40] Const 1963, art 3, § 2; Const 1963, art 4, § 1; see also *Cameron v Auto Club Ins Ass'n*, 476 Mich 55, 65; 718 NW2d 784 (2006) ("It is the legislators who establish the statutory law because the legislative power is exclusively theirs.").

[41] See *46th Circuit Trial Court v Crawford Co*, 476 Mich 131, 141; 719 NW2d 553 (2006) (opinion by MARKMAN, J.) ("Perhaps the most fundamental aspect of the 'legislative power' . . . is the power to tax and to appropriate for specified purposes.").

[42] See Const 1963, art 3, § 2; *Soap & Detergent Ass'n v Natural Resource Comm*, 415 Mich 728, 752; 330 NW2d 346 (1982) ("[W]here . . . the constitution explicitly grants powers of one branch to another, there can be no separation of powers problem."), citing *Wood v State Admin Bd*, 255 Mich 220, 224-225; 238 NW 16 (1931).

regulate "conditions of employment." Whatever the bounds of the commission's authority to increase rates of compensation, the Constitution gives the commission no comparable power to expend taxpayer funds in connection with its power to "regulate conditions of employment."

By the same logic, the commission has no explicit authority to require the Legislature to exercise its lawmaking power in the field of "conditions of employment." Under plaintiffs' interpretation of the constitutional provision at issue, the commission's power in this area would be so limitless as to include the authority for it to dictate the nuances of statutory schemes. Plaintiffs' argument that the commission has such authority must fail. Instead, when the commission wishes to regulate "conditions of employment," it must proceed within its own sphere, using its own constitutionally provided tools, which it typically does by promulgating and enforcing its rules.

## 2. 2011 PA 264 DOES NOT VIOLATE THE COMMISSION'S CONSTITUTIONAL AUTHORITY

Based on the foregoing, we hold that SERA could not have been, and thus is not, a product that the commission could have created by exercising its proper constitutional authority. These principles are equally relevant in considering whether the *Legislature* has overstepped its bounds and intruded into the sphere of the commission's constitutional responsibility. Unlike the federal Constitution, our Constitution is "not a grant of power to the Legislature, but is a limitation upon its powers."[43] Therefore, the

---

[43] *Taxpayers of Mich Against Casinos v Michigan*, 471 Mich 306, 327; 685 NW2d 221 (2004), quoting *In re Brewster Street Housing Site*, 291 Mich 313, 333; 289 NW 579 (1939) (quotation marks omitted).

17

legislative authority of the state "can do anything which it is not prohibited from doing by the people through the Constitution of the State or the United States."[44]

The commission has plenary, exclusive authority to "regulate all conditions of employment *in the classified service*."[45] As mentioned earlier, we assume without deciding that pensions are such "conditions of employment" and that the commission's authority under article 11, § 5 to "regulate all conditions of employment" includes the authority to establish, maintain, and amend its own pension plan.[46] We also assume without deciding that the commission's article 11, § 5 authority to "regulate all conditions of employment" is exclusive and not subject to the Legislature's authority in article 4, § 1 to exercise "[t]he legislative power of the State of Michigan" or its authority in article 4, § 49 to "enact laws relative to . . . conditions of employment." If that is the case, then SERA in its entirety is a legislative intrusion into the commission's sphere of authority to "regulate all conditions of employment," by virtue of the fact that it dictates an element of a condition of employment.[47] However, it is important to note that, in amending

---

[44] *Id.*, quoting *Attorney General v Montgomery*, 275 Mich 504, 538; 267 NW 550 (1936) (quotation marks omitted).

[45] Const 1963, art 11, § 5 (emphasis added); see also *Council No 11*, 408 Mich at 408, quoting *Plec*, 322 Mich 691.

[46] But see note 33 of this opinion.

[47] See *Plec*, 322 Mich at 694; *Kent Co Prosecutor v Kent Co Sheriff*, 425 Mich 718, 723; 391 NW2d 341 (1986); see also *Gray v Clerk of Common Pleas Court*, 366 Mich 588, 595; 115 NW 411 (1962) (stating that, because of the separation of powers, "[t]he courts cannot be hampered or limited in the discharge of their functions by either of the other 2 branches of government").

SERA by enacting 2011 PA 264, the Legislature has no more encroached upon the commission's authority to regulate pensions than it had before the amendment.

When confronted with a violation of the separation of powers, this Court has noted that it is permissible for one branch to acquiesce in the intrusion of another and thus avoid a constitutional conflict.[48] Here, the commission acquiesced in the Legislature's presumed violation of the separation of powers when it made SERA applicable to civil servants in Rule 5-13, which provides that "[a] classified employee is eligible for retirement benefits *as provided by law*."[49] And Rule 5-13, last amended effective March

---

[48] In *Judicial Attorneys Ass'n*, 459 Mich at 303, we noted that, although legislative commandeering of decisions related to judicial employment violated the separation of powers, "[t]he judicial branch may determine *on its own authority*, for practical reasons, to share with the legislative branch some limited employment-related decision making upon determining that such sharing is in the best interests of the judicial branch and the public as a whole." We further recognized "the possibility that a court may *choose* to share decision making in a manner that resembles the scheme of [a statute violating the separation of powers] . . . ." *Id.*; see also *McDougall v Schanz*, 461 Mich 15, 27; 597 NW2d 148 (1999) (stating that the Legislature may not interfere with the Supreme Court's *exclusive*, constitutional rulemaking authority "*save as the Court may acquiesce and adopt for retention at judicial will*") (emphasis added), citing with approval *Perin v Peuler (On Rehearing)*, 373 Mich 531, 541; 130 NW2d 4 (1964), which *McDougall* overruled on other grounds.

We are unpersuaded by Justice BERNSTEIN's attempt to diminish the relevance of *Perin* and *McDougall* to the instant case. His dissent would distinguish this Court's rulemaking authority from the commission's authority because this Court's authority "extends *only* to matters of practice and procedure," *McDougall*, 461 Mich at 27; by contrast, he argues, "there is no such limitation on the commission's authority *over conditions of employment* . . . ." *Post* at 6 (emphasis added). But the commission's authority is no more "plenary" than this Court's, as long as each is acting within its sphere of authority. "[T]he commission's 'sphere of authority' delimits its rule-making power . . . ." *Council No 11*, 408 Mich at 408.

[49] Civ Serv R 5-13 (emphasis added).

19

18, 2001, was in place when the Legislature enacted 2011 PA 246. Thus, upon enactment, the amendment necessarily became part of the "retirement benefits as provided by law" applicable to classified civil servants.

Furthermore, the dissent rightly states that "there is a meaningful difference between an assertion that the commission has the power to *dictate* what the Legislature enacts into law and an assertion that the commission is empowered to *object* to a legislative incursion into the commission's sphere of authority."[50] Here, both are occurring simultaneously, because plaintiffs object to the amended SERA and demand the reinstatement of the preamendment SERA. But that prior version of the law no longer exists.

We merely hold that the commission may adopt rules that acquiesce in a statute that allegedly intrudes on its sphere of authority, as it has here. What plaintiffs seek in this appeal appears to be beyond the power of the commission. The commission cannot decline to acquiesce by directing the Legislature to "revive" an act that no longer exists. And what the commission cannot constitutionally do directly, it cannot, through surrogates or otherwise, accomplish indirectly by resort to the judiciary.[51]

---

[50] *Post* at 3.

[51] Finally, and as defendants point out, under Const 1963, art 4, § 49, "The legislature may enact laws relative to the hours and conditions of employment." Defendants assert that this language grants the Legislature superseding authority over the commission on matters related to "conditions of employment." However, because it is unnecessary to resolving this case, we decline to address this argument at this time and instead rest our holding on the conclusion that 2011 PA 264 does not violate the separation of powers or the authority of the commission while it chooses to accept SERA benefits for civil service employees.

20

## V. CONCLUSION

Const 1963, art 11, § 5 vests the Civil Service Commission with plenary authority to "fix rates of compensation" and "regulate all conditions of employment[.]" The Legislature, by 2011 PA 264, amended SERA, which provides pensions to state employees, including those in the classified civil service. 2011 PA 264 does not infringe the commission's authority to "fix rates of compensation" because the ratifiers did not understand that phrase to include pensions or other fringe benefits. Likewise, when the commission acquiesces in the application of SERA to employees in the classified civil service, the presumed infringement of 2011 PA 264 presents no constitutional problem. The commission's authority to regulate does not permit the commission to enact, amend, or maintain the laws of this state.

We reverse the Court of Appeals and remand to the Court of Claims for further proceedings not inconsistent with this opinion.

Robert P. Young, Jr.
Stephen J. Markman
Brian K. Zahra
David F. Viviano

21

STATE OF MICHIGAN

SUPREME COURT

MICHIGAN COALITION OF STATE
EMPLOYEE UNIONS et al.,

       Plaintiffs-Appellees,

v                                     No. 147758

STATE OF MICHIGAN et al.,

       Defendants-Appellants.

_____

KELLY, J. (*concurring in part and dissenting in part*).

I concur in the majority's decision to reverse the judgment of the Court of Appeals and remand this case to the Court of Claims. I likewise agree with the majority's conclusion that, by amending the State Employees' Retirement Act (SERA)[1] with 2011 PA 264, the Legislature did not infringe the Civil Service Commission's authority to "fix rates of compensation" under Const 1963, art 11, § 5 because the ratifiers of the 1963 Constitution understood this phrase as authorizing the commission to establish job-specific salaries and pay schedules, not pensions or other fringe benefits. However, I respectfully dissent from the majority's decision to uphold 2011 PA 264 on the basis of the commission's continued acquiescence in SERA. Rather than "assuming" for purposes of this case that employees' pensions are "conditions of employment" within

_____

[1] MCL 38.1 *et seq.*

the meaning of article 11, § 5, as the majority does, I would address that very issue as necessary to the question on which this Court specifically granted leave.[2]  Because pensions are not "conditions of employment" within the meaning of article 11, § 5, I would hold that SERA and the specific provisions challenged therein—namely, MCL 38.35a, MCL 38.50a, and MCL 38.1e—are not conditions of employment and therefore do not implicate the commission's authority.

In 1943, the Legislature enacted SERA, establishing retirement benefits for state employees and conferring on the commission various powers and duties in implementing the system of retirement benefits.[3]  In the 72 years that SERA has been in existence, the Legislature has often amended it to affect state employee pensions, and 2011 PA 264 is no exception.[4]  Specifically, under MCL 38.50a(1) and (2), members currently enrolled

---

[2] *Mich Coalition of State Employee Unions v Michigan*, 495 Mich 921 (2014).

[3] 1943 PA 240.

[4] See, e.g., 1984 PA 3 (providing pension incentives to eligible state employees in exchange for early retirement); 1987 PA 57 (changing the formula for calculating future pensions by using a three-year average instead of the former five-year average); 1991 PA 62 (affecting the computation of members' retirement allowance depending on the age of retirement and providing members the right to elect a specified retirement option); 1992 PA 64 (providing pension incentives for early retirement); 1993 PA 195 (permitting members to increase their pensions by purchasing service credit); 1996 PA 487 (closing the pension fund for newly hired state employees, creating a new contribution plan for those employees, and providing that all employees hired on or after March 31, 1997, are "qualified participants" in a defined contribution plan in which the state contributes an amount equal to 4% of the participant's compensation and will match up to an additional 3% of the participant's contributions, and eliminating any fixed retirement allowance provided by the state); 1998 PA 205 (permitting members to increase their pensions by purchasing service credit); 2002 PA 93 (providing for nonduty disability retirement benefits); 2002 PA 743 (providing pension incentives for early retirement); and 2010 PA 185 (providing pension incentives for individuals retiring between November 1, 2010, and January 1, 2011).

in the state pension plan can elect to remain in that plan, but only by contributing "an amount equal to 4% of his or her compensation" until termination or until reaching his or her attainment date, if the latter was designated by the employee.[5] If an existing member in the state pension plan chooses *not* to make those 4% contributions, that member makes the irrevocable election to retain his or her existing accumulated contributions to the pension plan but, going forward, will receive credit for future service and compensation only through the defined contribution plan.[6]

In granting leave to appeal, we specifically asked the parties whether 2011 PA 264 implicates the commission's authority under article 11, § 5, which, in part, expressly authorizes the commission to "regulate all conditions of employment in the classified service." It is beyond dispute that the challenged provisions of 2011 PA 264 concern amendments to the state employee pension system. The issue confronting this Court is whether these amendments alter a "condition of employment" within the meaning of article 11, § 5 and, therefore, invade the commission's constitutional authority. Rather than avoiding this constitutional issue, I would squarely address this question and, in doing so, would hold that these provisions do not implicate the commission's authority

---

[5] MCL 38.35a.

[6] MCL 38.50a(4). 2011 PA 264 also amended MCL 38.1e to change the calculation for overtime earnings. More specifically, a member's "final average compensation" is no longer computed using the three highest-paid consecutive years for overtime and dividing that total by three; rather, overtime earnings are calculated using "the average of annual includable overtime compensation paid to the member during" a specified consecutive six years of credited service.

3

under article 11, § 5 because a pension, by definition, is not a *condition of employment* but rather an *accrual of future financial benefits*.

The text of article 11, § 5 suggests that the phrase "conditions of employment" is not without restriction. Indeed, the commission's general authority to "regulate all conditions of employment" is placed at the end of a list of specifically delineated powers: to "classify all positions in the classified service according to their respective duties and responsibilities," to "approve or disapprove disbursements for all personal services," to "determine by competitive examination and performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service," and to "make rules and regulations covering all personnel transactions."

This Court has explained that the commission has the authority "to regulate employment-related activity involving internal matters such as job specifications, compensation, grievance procedures, discipline, collective bargaining and job performance," but not activity that is not related to employment.[7] If "conditions of employment" were interpreted, as plaintiffs and the Court of Appeals contend, as a broad catchall intended to prevent the Legislature from regulating any and all terms of employment involving classified state employees, it would violate the doctrine of

---

[7] *Council No 11, AFSCME v Civil Serv Comm*, 408 Mich 385, 406-407; 292 NW2d 442 (1980).

4

*ejusdem generis*, under which general terms are restricted to include only items that are "of the same kind, class, character, or nature as those specifically enumerated."[8]

Instead, because the specific powers articulated in article 11, § 5 are limited to the commission's authority over internal matters such as professional qualifications and expectations, compensation, job performance, and hiring and firing decisions, only a narrower concept of "conditions of employment" delineates the limited category of issues within the commission's exclusive control.[9] Notably absent from those categories is the authority to regulate pensions or retirement benefits. Furthermore, if the phrase "conditions of employment" were given a broader meaning, it would necessarily include those powers defined in specific terms, rendering that language superfluous.

The history behind the grant of authority in article 11, § 5 is also instructive. Clearly, the voters intended to provide the commission with the authority to "regulate all conditions of employment for employees in the classified service" when they approved

---

[8] *Huggett v Dep't of Natural Resources*, 464 Mich 711, 718-719; 629 NW2d 915 (2001). See also *People v Brown*, 406 Mich 215, 221; 277 NW2d 155 (1979).

[9] Justice BERNSTEIN suggests that a broader interpretation of the phrase "conditions of employment" is necessary to encompass the commission's authority to regulate "disciplinary procedures" as well as "collective bargaining." *Post* at 10. Far from being "disparate concepts," *post* at 10, disciplinary procedures and collective bargaining are rather congruent; indeed, both involve internal employment-related policies and, therefore, are entirely separate from the notion of pensions. Similarly, Justice BERNSTEIN fails to explain how the commission's purported authority to regulate pensions derives from its authority to regulate certain off-duty political activity. If anything, that this Court has understood the commission's sphere of authority to "delimit[] its rule-making power and confine[] its jurisdiction over the political activity of classified personnel *to on-the-job behavior related to job performance*," *Council No 11*, 408 Mich at 408 (emphasis added), only reinforces a more limited interpretation of the powers identified under article 11, § 5.

5

the amendment of Const 1908, art 6, § 22 in 1940. By retaining this very same language in the 1963 Constitution, the ratifiers of article 11, § 5 expressed their intent that the commission continue to have such authority.[10] And because, by that point, SERA had been in effect for 20 years, the Legislature had amended it several times in the interim, and many of those amendments specifically affected pensions, the Legislature plainly did not regard the ratification of article 6, § 22 as prohibiting its authority to enact and amend SERA.[11] Still, had the drafters of the 1963 Constitution believed SERA to be an unconstitutional usurpation of the commission's authority, they easily could have clarified that by conferring additional powers on the commission pursuant to article 11, § 5, or by limiting the Legislature's powers under article 4.[12]

---

[10] While Justice BERNSTEIN appears to agree with this proposition, he nevertheless concludes that this "supposed intention shines no light on whether the commission can properly challenge legislative incursion into its sphere of authority." *Post* at 11. However, the ability to challenge an incursion into the commission's sphere of authority is inconsequential where, like here, that authority has not been implicated. Furthermore, to the extent that Justice BERNSTEIN surmises that the 1963 Constitution "did not change the underlying *presumption* that the commission maintained the constitutional authority to regulate pensions," *post* at 11 (emphasis added), that is all that it is: a presumption. Justice BERNSTEIN identifies no constitutional language that plainly or by fair implication supports the conclusion that the commission is vested with the authority to regulate pensions.

[11] Justice BERNSTEIN takes the position that the commission's failure to challenge any portion of SERA between its 1943 enactment and the ratification of the 1963 Constitution merely indicates that the commission "did not believe that the Legislature had yet overstepped its bounds." *Post* at 11. But it is just as likely, if not more probable, that the commission did not challenge SERA and the myriad amendments relating to pensions because the commission understood that it was not within its scope of authority to do so.

[12] See *Council No 11*, 408 Mich at 404.

6

Furthermore, article 11, § 5 does not contemplate the commission's authority to regulate "conditions of employment" in a vacuum. For instance, the convention comment to article 11, § 5 indicates that in connection with the proposed 1963 Constitution, "[o]f special interest to civil service personnel is the provision in [article 9, § 24], . . . which specifies that pension plans and retirement systems of the state shall be contractual obligations 'which shall not be diminished or impaired.' "[13] Indeed, this Court recognized that article 9, § 24 specifically prohibits legislative impairment of "accrued financial benefits," though the Legislature "may properly attach new conditions for earning financial benefits which have not yet accrued."[14] Similarly, by adopting article 9, § 24, the ratifiers conveyed their intent that it would be the employer itself—and *not* the commission—who could *prospectively* change pension benefits.[15]

In examining 2011 PA 264, it is important to note that MCL 38.35a, MCL 38.50a, and MCL 38.1e do nothing to implicate article 9, § 24 because they do not impair or diminish pension members' already accrued pension benefits; rather, they only affect the accrual of *future* pension benefits. Moreover, because pension proceeds are payable to the member *upon* his or her completion of service, calculation of those benefits does not impose *conditions of* employment, but creates *benefits following* employment.[16] Clearly,

---

[13] 2 Official Record, Constitutional Convention 1961, p 3045 (emphasis added).

[14] *Advisory Opinion re Constitutionality of 1972 PA 258*, 389 Mich 659, 663; 209 NW2d 200 (1973).

[15] *Id.*, citing 1 Official Record, Constitutional Convention 1961, pp 770-771.

[16] Justice BERNSTEIN posits that nothing in the Constitution suggests that a condition of employment must occur *during* employment; instead, he insists that the phrase encompasses an employee's "ability to plan ahead for expected future outcomes[.]" *Post*

7

then, that the Legislature offered pension members the opportunity to remain in the defined benefit pension plan (subject to the 4% contribution requirement) demonstrates that the Legislature did not regulate a condition of employment but merely provided members the additional benefit option of membership in the defined contribution plan, which they were free to accept or decline. That 2011 PA 264 presents members with a retirement allowance election makes clear that continued employment is not conditioned on paying the 4% contribution.[17] In other words, because enrolling in the now-contributory defined benefit pension plan does not alter a pension member's existing employment circumstances but rather affects a benefit subsequent to employment, the challenged provisions of 2011 PA 264 do not attempt to regulate a condition of employment and, therefore, do not invade the commission's sphere of authority under article 11, § 5.[18]

---

at 12. As support for this assertion, Justice BERNSTEIN explains that while grievance procedures likely do not occur as part of an employee's day-to-day employment routine, the commission nevertheless has plenary authority to regulate such matters, thus providing employees with expected future procedures. Regardless of how routine grievance procedures might be, regulating grievance procedures is essential to an employee's *current* employment conditions, even if that employee does not require the use of those procedures during his or her period of employment. This stands in stark contrast to a pension, which, by definition, relates to a time *after* employment.

[17] Contrary to Justice BERNSTEIN's understanding of my analysis, I agree that not all conditions of employment require an employee "to behave a certain way in order to maintain employment." *Post* at 12. Instead, a condition of employment encompasses the policies and procedures existing during the pendency of employment and could be something as commonplace as which entrance an employee should use when entering the building after regular office hours or how long employees are entitled to take breaks.

[18] Curiously, the majority opinion appears to suggest that because the commission was created by the Constitution, the issue of pensions is equally constitutional in nature. See *ante* at 18-19. However, as evidenced by the Legislature's enactment of SERA

As the majority recognizes, the commission's regulatory authority under article 11, § 5 does not empower the commission to enact, amend, or revise the laws of this state because it is not a legislative body.[19] It necessarily follows, then, that the commission lacks the authority to enact, prevent, or otherwise dictate legislation as it relates to pensions. Even the commission implicitly acknowledges these limitations because it has never attempted to enact a separate retirement system,[20] nor has it adopted any separate rules regulating pensions.[21] To the contrary, the commission acknowledges only an advisory role in the administration of SERA.[22] I therefore disagree with the majority to

---

(legislation "creat[ing]" a "state employees' retirement system," MCL 38.2(1)) and the commission's promulgation of Civil Service Rule 5-13 (an administrative rule authorizing retirement benefits for eligible classified employees "as provided by law"), the right to pensions is a creature of statute, not the Constitution. Therefore, the constitutional nature of the commission itself does not somehow transform a benefit of employment into a constitutional right.

[19] The commission is an administrative agency "existing" under the Constitution (as opposed to established by the Legislature). *Viculin v Dep't of Civil Serv*, 386 Mich 375, 385 & n 11; 192 NW2d 449 (1971). "As are all such administrative agencies," the commission, like the State Board of Education, "is part of and within the executive branch[.]" *Straus v Governor*, 459 Mich 526, 535, 537; 592 NW2d 53 (1999) (citations and quotation marks omitted).

[20] Indeed, as previously explained, the legislative enactment of SERA was a response to the commission's encouragement of the Legislature to establish a retirement system for classified state employees.

[21] As previously indicated, Civil Serv R 5-13 conspicuously authorizes retirement benefits for eligible classified employees "as provided by law."

[22] See Civ Serv R 2-17.1 (requiring the state personnel director to "cooperate with the state employees' retirement board in maintaining a comprehensive retirement system for classified employees"). Substantively, this rule is indistinguishable from its 1963 counterpart, Civ Serv R 31.1.

9

the extent that it assumes that the terms of the pension plan are conditions of employment. Rather, because the terms of pension plans are not conditions of employment, they do not implicate article 11, § 5 in the first instance. Accordingly, I would conclude that 2011 PA 264 does not intrude into the commission's sphere of authority.

Consistent with this analysis, I concur in the majority's decision to reverse the decision of the Court of Appeals and remand this case to the Court of Claims. Nevertheless, I respectfully dissent from the majority's assumption that a pension is a condition of employment and instead would reach the question this Court posed—and the parties briefed—and uphold 2011 PA 264 because it does not regulate a "condition of employment" within the meaning of article 11, § 5.

Mary Beth Kelly

STATE OF MICHIGAN

SUPREME COURT

MICHIGAN COALITION OF STATE
EMPLOYEE UNIONS et al.,

       Plaintiffs-Appellees,

v                              No. 147758

STATE OF MICHIGAN et al.,

       Defendants-Appellants.

_____

MCCORMACK, J. (*concurring in part and dissenting in part*).

I concur in the majority's decision to reverse the judgment of the Court of Appeals and to remand this case to the Court of Claims. I also agree with Justice BERNSTEIN that pensions are "conditions of employment" for the purposes of Const 1963, art 11, § 5 and would explicitly so hold.

I am less confident about what the Civil Service Commission's constitutional authority means in this particular context, given that the commission cannot legislate or make appropriations, as both the majority and Justice BERNSTEIN acknowledge, and therefore cannot accomplish many goals with respect to retirement benefits without legislative action. See Const 1963, art 4, § 1 ("The legislative power of the State of Michigan is vested in a senate and a house of representatives."); *46th Circuit Trial Court v Crawford Co*, 476 Mich 131, 141; 719 NW2d 553 (2006) (opinion by MARKMAN, J.) (stating that "the power to tax and to appropriate for specific purposes" is a "fundamental aspect" of legislative power); Const 1963, art 3, § 2 ("No person exercising powers of

one branch shall exercise powers properly belonging to another branch except as expressly provided in [the] constitution.").  Stated differently, I believe the question of how the commission's power to regulate pensions as a "condition of employment" within the civil service can be reconciled with the Legislature's exclusive authority to make appropriations to be a difficult one. I write separately because while the majority's explanation of the commission's historic acquiescence in the legislature's encroachment might be correct, given that it is not essential to the majority's holding and was not explored by the parties, I would refrain from commenting on it.  Although the majority may not believe that its discussion of this point drives any of its analysis, I do not believe its opinion makes that sufficiently clear.

Despite the significance of this separation of powers question, I ultimately agree with the majority that it is not a question we should reach just yet.  Because the commission, as the affected constitutional actor, is not a party to this lawsuit, has not otherwise officially objected to the legislature's action, and appears by its own official pronouncement, Civil Service Rule 5-13, to have acceded to the legislation, I believe we should refrain from deciding the separation of powers question that the plaintiffs have asserted on the commission's behalf for today.  But since Rule 5-13 is all we need to decide this case, I would not consider what import, if any, to assign the commission's historical "acquiescence" in the broader context.

If, in the future, the commission changes its position and objects to the Legislature's enactment of 2011 PA 264, we will need to confront the question of the commission's constitutional authority and the effect of its historical accommodation of the legislative enactments embodied in the State Employees Retirement Act,

2

MCL 38.1 *et seq.* In my view, those questions should be evaluated once there is a genuine dispute between the commission and the Legislature, once the affected parties have had sufficient opportunity to answer them, and after this Court has taken time to carefully evaluate them with the benefit of that input. For now, I believe the majority is ultimately correct to postpone that difficult constitutional question for another day.

Bridget M. McCormack

STATE OF MICHIGAN

SUPREME COURT

MICHIGAN COALITION OF STATE
EMPLOYEE UNIONS et al.,

        Plaintiffs-Appellees,

v                             No. 147758

STATE OF MICHIGAN et al.,

        Defendants-Appellants.

_____

BERNSTEIN, J. (*dissenting*).

Our Constitution provides that the Civil Service Commission has plenary authority to "regulate all conditions of employment." Const 1963, art 11, § 5. The majority concludes that the 2011 amendments to the State Employees' Retirement Act (SERA), MCL 38.1 *et seq.*, do not infringe the commission's constitutional grant of authority where the commission has previously acquiesced to SERA. Put simply, the majority holds that to reject only those amendments found in 2011 PA 264, and not SERA in its entirety, would constitute a line-item veto on the part of the commission and that the separation of powers doctrine dictates that an executive body cannot exercise legislative powers.

As an initial matter, I agree with the majority that a pension is a "condition[] of employment" as that phrase is used in Const 1963, art 11, § 5, and that the commission's authority under that provision includes the authority to establish, maintain, and amend a

pension plan.[1]  However, I disagree that the commission's historical practice towards SERA constitutes executive acquiescence that would waive its right to object to an unconstitutional legislative infringement.  Moreover, because 2011 PA 264 is an unconstitutional infringement of the commission's constitutional grant of *plenary* authority, rejection of the amendments constitutes a recognition of the amendments' unconstitutional nature and not a legislative action akin to a line-item veto.  I would therefore affirm the Court of Appeals judgment and hold that the challenged provisions of 2011 PA 264 are unconstitutional as applied to employees in the classified civil service.

## I.  SEPARATION OF POWERS

I agree with the majority that the separation of powers doctrine generally dictates that an executive body like the commission does not have the authority to either enact statutes or appropriate funds.[2]  Save for the express grant of authority that allows the commission to increase rates of compensation for employees in the classified civil service, the commission does not otherwise have the power to appropriate funds in the pursuit of regulating conditions of employment.

The majority thus reasons that the commission lacks the authority to require the Legislature to enact statutes as the commission sees fit.  I agree with the majority that the

---

[1] Although the majority assumes this without deciding, Justice KELLY would hold that pensions are not conditions of employment under Const 1963, art 11, § 5. I respectfully disagree and address this argument in Part III of my dissent.

[2] See Const 1963, art 3, § 2.

2

commission's constitutional grant of authority does not go so far as to allow the commission to "dictate [to the Legislature] the nuances of statutory schemes," even when those statutory schemes touch upon the commission's sphere of authority ("conditions of employment"). *Ante* at 17. However, there is a meaningful difference between an assertion that the commission has the power to *dictate* what the Legislature enacts into law and an assertion that the commission is empowered to *object* to a legislative incursion into the commission's sphere of authority. The former is a usurpation of legislative powers, which the separation of powers doctrine forbids; the latter is merely a recognition that because the commission's "grant of power is from the Constitution, any executive, legislative or judicial attempt at incursion into that 'sphere' would be unavailing." *Council No 11, AFSCME v Civil Serv Comm*, 408 Mich 385, 408; 292 NW2d 442 (1980).

The majority assumes without deciding that the commission has a constitutional grant of authority to establish, maintain, and amend a pension plan. When the Legislature interferes with this plenary grant of authority, the commission may object to this improper interference. In so doing, the commission does not seek to exercise the legislative power to enact, amend, or veto laws. Instead, the commission's rejection of the challenged provisions in 2011 PA 264 is better characterized as an objection to the *Legislature's* failure to respect the separation of powers doctrine. If one accepts that a pension is a condition of employment over which the commission has plenary authority, the Legislature is the entity that intrudes upon another branch of government by making laws that attempt to govern what lies in the commission's sphere. An objection to unconstitutional action does not equate to the exercise of legislative authority. The

3

commission's objection is not a line-item veto of legislative action that would itself constitute a violation of the separation of powers doctrine, but is instead better understood as a declaration that the legislative action is a violation of the separation of powers doctrine and is therefore unconstitutional at the outset.[3]

## II. EXECUTIVE ACQUIESCENCE

The majority also considers whether the Legislature intruded into the sphere of the commission's authority in enacting the challenged provisions of 2011 PA 264. Again, in assuming without deciding that pensions are conditions of employment over which the commission has plenary authority, the majority concludes that SERA itself is an intrusion into the commission's authority and that the challenged provisions are more of the same. Faced with the Legislature's violation of the separation of powers, the majority turns to the idea of executive acquiescence, concluding that the commission acquiesced to "the Legislature's presumed violation of the separation of powers when it made SERA applicable to civil servants[.]" *Ante* at 19. In support of this claim, the majority cites Civil Service Rule 5-13, which provides that "[a] classified employee is eligible for retirement benefits as provided by law." Because the law regarding retirement benefits now encompasses the challenged provisions enacted in 2011 PA 264, the majority concludes that the commission cannot now revoke its acquiescence without itself

---

[3] See *Judicial Attorneys Ass'n v Michigan*, 459 Mich 291, 303-304; 586 NW2d 894 (1998) (holding certain statutory provisions enacted by the Legislature to be unconstitutional under the separation of powers doctrine and therefore struck).

4

violating the separation of powers doctrine by directing the Legislature to strike these provisions.

In support of the idea of executive acquiescence, the majority relies on a series of cases that considered the concept of *judicial* acquiescence. This line of cases dealt with judicial acquiescence to legislative action. In *Perin v Peuler*, 373 Mich 531, 541; 130 NW2d 4 (1964), this Court first defined the scope of judicial rulemaking by stating that

> [t]he function of enacting and amending judicial rules of practice and procedure has been committed exclusively to this Court (Const 1908, art 7, § 5; Const 1963, art 6, § 5); a function with which the legislature may not meddle or interfere save as the Court may acquiesce and adopt for retention at judicial will.

However, this Court recognized a limit to this general grant of constitutional authority: "[A]s is evident from the plain language of [Const 1963] art 6, § 5, this Court's constitutional rule-making authority extends *only* to matters of practice and procedure." *McDougall v Schanz*, 461 Mich 15, 27; 597 NW2d 148 (1999). In distinguishing between substantive rules and rules of practice and procedure, the *McDougall* Court found that the *Perin* Court had "overstated the reach of our rule-making authority," explaining that the distinction between rules of substance and procedure "is one that was not only advocated by recognized scholars contemporaneously with the development and passage of our 1963 Constitution, but one that . . . the drafters contemplated." *Id*. at 29-30.

The *McDougall* majority thus stands for the proposition that this Court's constitutional grant of authority to promulgate rules is not a grant of *plenary* authority. Although this Court has "exclusive rule-making authority in matters of practice and

5

procedure," *id*. at 26, the *McDougall* majority was primarily concerned with making clear that this Court does not have such authority with regard to *substantive* rules. In contrast, there is no such limitation on the commission's authority over conditions of employment in either the plain language of the Constitution or in the minds of the ratifiers, whose clear intent was to remove the classified civil service from legislative interference.[4] Moreover, *McDougall* is inapplicable to the question of even *judicial* acquiescence, let alone executive, as this Court recognized that it "is not authorized to enact . . . rules that establish, abrogate, or modify the substantive law." *Id*. at 27. The holding in *McDougall* thus concerned whether the Legislature had enacted a substantive or a procedural rule; in other words, because this Court does not have the constitutional authority to promulgate substantive rules, there is no question of judicial acquiescence where the Court attempts to act outside of the bounds of its sphere of authority.

In contrast to the situation presented in *McDougall*, the commission's authority over conditions of employment is plenary; any legislative incursion into this sphere is itself a violation of the separation of powers doctrine. The commission's involvement, however minimal, in the enactment of SERA and amendments thereafter speaks nothing to this underlying constitutional principle.[5]

---

[4] See *Council No 11*, 408 Mich at 397-401 (detailing the history of the civil service system in Michigan).

[5] "The practical necessity for the judiciary to reach accommodation with those who fund the courts on an annual basis, however, cannot, as a constitutional matter, be used as an excuse to diminish the judiciary's essential authority over its own personnel." *Judicial Attorneys Ass'n*, 459 Mich at 302-303.

6

The majority finally relies on *Judicial Attorneys Ass'n v Michigan*, 459 Mich 291; 586 NW2d 894 (1998). In that case, this Court held that statutory provisions that designated counties as the employers of judicial employees violated the separation of powers doctrine. *Id*. at 302-303. In so holding, this Court acknowledged that practical necessity (in particular, the lack of the ability to appropriate funds) drove the judiciary to reach certain accommodations with the Legislature. *Id*. However, this Court specifically found that this prior acquiescence could *not* "be used as an excuse to diminish the judiciary's essential authority over its own personnel." *Id*. at 303.[6] *Judicial Attorneys Ass'n* thus stands for the proposition that prior acquiescence alone, especially in the face of practical considerations such as the lack of appropriation authority, does not waive one branch's right to contest the intrusion of another branch in the future.[7]

The majority holds that the commission "may adopt rules [like Civ Serv R 5-13] that acquiesce in a statute that allegedly intrudes on its sphere of authority, as it has here."

---

[6] Although "[t]he judicial branch may determine on its own authority, for practical reasons, to share with the legislative branch some limited employment-related decision making upon determining that such sharing is in the best interests of the judicial branch and the public as a whole[,] . . . [t]he constitutionality of an act must rest on the provisions of the act itself, and not on the compensating actions of those affected by the act." *Id*. at 303-304 (emphasis omitted).

[7] In holding that a legislative veto provision enacted by Congress was unconstitutional, the Supreme Court declined to find significant the fact that Congress had previously enacted hundreds of such provisions in prior decades that had gone unchallenged: "Convenience and efficiency are not the primary objectives—or the hallmarks—of democratic government and our inquiry is sharpened rather than blunted by the fact that congressional veto provisions are appearing with increasing frequency in statutes which delegate authority to executive and independent agencies[.]" *Immigration and Naturalization Serv v Chadha*, 462 US 919, 944; 103 S Ct 2764; 77 L Ed 2d 317 (1983).

7

*Ante* at 20. This is in line with the observation in *Judicial Attorneys Ass'n* that one branch may decide, for practical reasons, to acquiesce to another branch's involvement. See *Judicial Attorneys Ass'n*, 459 Mich at 304 ("Separation of powers does not preclude what has proven to be the rule rather than the exception in the operation of Michigan's trial courts: cooperation, communication, and accommodation between trial courts and their funding units in their exercise of shared responsibility to the public. The philosophical underpinnings of the separation of powers doctrine, Michigan case law, and common sense all point toward such cooperation."). However, "[t]he constitutionality of an act must rest on the provisions of the act itself, and not on the compensating actions of those affected by the act." *Id.*

Put simply—one branch's acquiescence, however affirmative, cannot render an unconstitutional act constitutional.[8] That the commission has historically worked to reach an accommodation with the Legislature in the enactment and subsequent amendments of SERA to facilitate cooperation among different branches of government does not strip it of the ability to object to the challenged provisions of 2011 PA 264. Mere acquiescence *cannot* cure a violation of the separation of powers doctrine. If pensions do fall within the commission's sphere of authority, the commission cannot

---

[8] Justice MCCORMACK finds it meaningful that the commission, "as the affected constitutional actor," is not party to this lawsuit and has not officially objected to the Legislature's actions. *Ante* at 2. However, because the commission and the Legislature cannot acquiesce to a violation of the Michigan Constitution and thereby cure it, I do not believe this distinction is of any importance in my analysis.

8

have the ability to waive their *constitutional grant of plenary authority*.[9]  Although the majority suggests that the commission would itself violate the separation of powers doctrine by directing the Legislature to exercise its legislative powers in striking the challenged provisions of 2011 PA 264, I respectfully disagree.  Instead, I would conclude that plaintiffs are merely requesting that we strike the unconstitutional provisions of the amended SERA, not directing the Legislature to revive a "prior version of the law [that] no longer exists."  *Ante* at 20.[10]

Because the challenged provisions of 2011 PA 264 constitute violations of the separation of powers doctrine, I would hold that they are not properly part of SERA.

### III.  CONDITION OF EMPLOYMENT

While the majority assumes without deciding that pensions are a condition of employment as that phrase is understood in Const 1963, art 11, § 5, Justice KELLY would uphold 2011 PA 264 on the basis that it does not regulate conditions of employment.  I respectfully disagree with Justice KELLY's conclusion.  I believe that pensions are a condition of employment.

---

[9] I also note that Civil Service Rule 5-13 is a thin reed upon which to hang a constitutional waiver.  If the Legislature's enactment of the challenged provisions of 2011 PA 264 are indeed unconstitutional as a violation of the separation of powers doctrine, they would not properly be benefits "as provided by law," given that our Constitution is considered part of Michigan law.

[10] This characterization of plaintiffs' requested relief runs counter to this Court's holding in *Judicial Attorneys Ass'n*, 459 Mich at 304, in which the challenged provisions alone were found to be unconstitutional and thus struck.

9

Justice KELLY argues that the plain language of the Constitution indicates that the phrase "conditions of employment" was not intended as a broad catchall, and is instead limited to internal matters. However, I believe this reading fails to account for this Court's prior pronouncement that the commission has the authority "to regulate employment-related activity involving internal matters *such as* job specifications, compensation, grievance procedures, discipline, collective bargaining and job performance, *including* the power to prohibit activity during working hours which is found to interfere with satisfactory job performance." *Council No 11*, 408 Mich at 406-407 (emphasis added).[11] Certainly a broad definition of the phrase "conditions of employment" need be employed in order to tie together such disparate concepts as disciplinary procedures and collective bargaining. Furthermore, this Court continued by stating that "it is within contemplation that off-duty political involvement may adversely affect a classified employee's performance at work. If and when it does, the commission is empowered to deal with such circumstances on a case-by-case basis." *Id*. at 407. A definition that embraces off-duty political involvement is a broad one that can also encompass pensions, which are arguably easier to square away as employment-related activity involving internal matters.

Justice KELLY also notes that, by the time the 1963 Constitution was ratified, SERA had been in effect for 20 years; by keeping the same grant of authority found in the 1908 Constitution, the ratifiers thus did not intend to eliminate the Legislature's

---

[11] I believe that the use of the phrases "such as" and "including" suggests that this was not meant as an exhaustive list.

10

authority to enact and amend SERA.  In support of this proposition, Justice KELLY cites a comment that suggests the ratifiers intended that pension plans not be diminished or impaired.  But as stated earlier, this supposed intention shines no light on whether the commission can properly challenge legislative incursion into its sphere of authority.  I agree that the ratifiers did not intend to proscribe the Legislature's ability to enact or amend SERA, but this did not change the underlying presumption that the commission maintained the constitutional authority to regulate pensions; that the commission did not challenge the enactment or amendment of SERA prior to the ratification of the 1963 Constitution only indicates that it did not believe that the Legislature had yet overstepped its bounds.[12]

Justice KELLY finally notes that the challenged provisions of 2011 PA 264 only affect the accrual of future pension benefits; because such benefits are only payable to individuals upon leaving the classified civil service, pension benefits *follow* employment, and are not conditions *of* employment.  The constitutional difference wrought by this change in preposition appears to hang on two observations: first, that pension benefits are payable in the future, and second, that a certain retirement election allowance is not required for continued employment.

As to the first, there is nothing in the plain language of the Constitution that suggests that a "condition of employment" is limited in scope to those internal matters

---

[12] *Myers v United States*, 272 US 52, 171; 47 S Ct 21; 71 L Ed 160 (1926) ("When instances which actually involve the question are rare, or have not in fact occurred, the weight of the mere presence of acts on the statute book for a considerable time, as showing general acquiescence in the legislative assertion of questioned power, is minimized.").

that are present during a particular time period. This Court has previously stated that grievance procedures are unquestionably within the commission's grant of authority, *Council No 11*, 408 Mich at 406, and one hopes that grievance procedures are not part of everyday reality for most employees in the classified civil service. Indeed, the ability to plan ahead for expected future outcomes is part and parcel of the internal, employment-related activity that constitutes conditions *of* employment. See *Wescott v Civil Serv Comm*, 298 Mich App 158, 164; 825 NW2d 674 (2012) (holding that the commission does not need to consider disability decisions rendered by other state agencies in making a determination on a request for long-term disability benefits); *Mich State Employees Ass'n v Dep't of Mental Health*, 421 Mich 152, 163-164; 365 NW2d 93 (1984) (holding that it is the constitutional duty of the commission to establish discharge procedures in accordance with due process). The very motivation for the creation of the classified civil service points to the same conclusion: a merit-based system was memorialized in our Constitution out of a fear of a patronage system, which could result in the *future* termination of otherwise qualified employees upon a change in political fortune. See *Mich State Employees Ass'n*, 421 Mich at 159-160. As to the second, a condition of employment is not defined by whether a classified civil service employee is required to behave a certain way in order to maintain employment. This definition is not broad enough to encompass "job specifications, compensation, grievance procedures, discipline, collective bargaining and job performance," *Council No 11*, 408 Mich at 406, which are all unquestionably part of the commission's grant of plenary authority.

12

Because I conclude that pensions are a condition of employment under Const 1963, art 11, § 5, I would hold that the challenged provisions of 2011 PA 264 improperly intrude on the commission's constitutional grant of plenary authority.

## IV. CONCLUSION

I would hold that pensions fall under the commission's plenary authority over conditions of employment under Const 1963, art 11, § 5. Because the commission has not acquiesced to the Legislature's intrusion into its constitutional sphere of authority, I would hold that the challenged provisions of 2011 PA 264 constitute a violation of the separation of powers doctrine. Accordingly, I would affirm the decision of the Court of Appeals.

Richard H. Bernstein

13